DUANE MORRIS LLP
Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
R. Terry Parker
1540 Broadway
New York, NY 10036

Attorneys for Plaintiffs
Ben & Jerry's Homemade Inc.
and Conopco, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC. and CONOPCO, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RODAX DISTRIBUTORS, INC. d/b/a CABALLERO VIDEO, M. MORRIS, INC. d/b/a CABALLERO VIDEO, DANIEL MAMANE and TOMER YOFFE,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, Ben & Jerry's Homemade, Inc. and Conopco, Inc., by their undersigned attorneys, Duane Morris LLP, for their Complaint allege as follows:

SUBSTANCE OF THE ACTION

1.      This is an action for trademark and trade dress dilution and infringement of Plaintiffs' famous federally registered BEN & JERRY'S® trademark (hereinafter, the "BEN & JERRY'S® Mark") and other related trademarks and trade dress, and federal unfair competition, and for substantial and related claims of unfair competition, deceptive trade practices, dilution, tarnishment and injury to business reputation under the state and common laws of the State of New York.

2.     Plaintiffs' claims arise from Defendants' production, marketing, advertising, promotion, distribution and sale of a series of DVDs containing exploitative, hardcore pornographic films marketed under the name "BEN & CHERRY'S." ("Infringing "BEN & CHERRY'S" DVDs")  Defendants' pornographic Infringing "BEN & CHERRY'S" DVDs feature titles and themes based on Plaintiffs' well-known and iconic BEN & JERRY'S® ice cream flavors and nearly identical simulations of Plaintiffs' famous BEN & JERRY'S® Marks (as hereinafter defined), BEN & JERRY'S® Trade Dress (as hereinafter defined), BEN & JERRY'S® Logo (as hereinafter defined), and related artwork (collectively, the "BEN & JERRY'S® Intellectual Property").  Defendants' illegal activities provide the bases for Plaintiffs' claims for federal trademark and trade dress dilution under Section 43(c)(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §1125(c)(1), for federal trademark and trade dress infringement and unfair competition under Sections 32(1) and § 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and for substantial and related claims of unfair competition, deceptive trade practices, dilution, tarnishment and injury to business reputation under the state and common laws of the State of New York.  Plaintiffs seek injunctive relief and damages.

<u>JURISDICTION AND VENUE</u>

3.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, Sections 1332(a), 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. § 1338(a) and § 1338(b), and under principles of supplementary jurisdiction.  Venue properly lies in this District under Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and § 1391(c), because defendants Rodax Distributors d/b/a Caballero Video ("Rodax"), M. Morris, Inc. d/b/a Caballero Video ("Morris"), Daniel Mamane ("Mamane") and Tomer Yoffe ("Yoffe") do business in and/or have substantial contacts with the State of New York and a substantial portion of the events at issue have arisen and/or will arise in this judicial district.  Rodax, Morris, Mamane and Yoffe are each referred to herein as "Defendant" and collectively referred to herein as

"Defendants". Defendants Rodax and Morris are sometimes referred to herein as "Corporate Defendants".

4.     Upon information and belief, Defendants' marketing, distribution and sale of the Infringing "BEN & CHERRY'S" DVDs throughout the United States, including in New York, through Defendants' websites, third-party websites or distributors, some of which are New York based, constitute substantial contacts with the State of New York, such that Defendants may reasonably anticipate being brought into a New York court.

5.     Upon information and belief, Defendants also operate one or more interactive websites on which anyone with access to an Internet connection, including computer users in New York, can click, purchase and download the Infringing "BEN & CHERRY'S" DVDs, so that Defendants make the Infringing "BEN & CHERRY'S" DVDs available to New York consumers.

6.     This Court has personal jurisdiction over Defendant Mamane because, upon information and belief, he maintains substantial contacts with New York and actively controls and/or directs, in whole or in part, the activities of the Corporate Defendants, including the activities and operations of the Corporate Defendants complained of herein.

7.     This Court also has personal jurisdiction over Defendant Mamane because he purposefully availed himself of the laws of New York.  By operating, either directly or through one or both of the Corporate Defendants, one or more interactive websites which make the Infringing "BEN & CHERRY'S" DVDs available to anyone with access to an Internet connection, including computer users in New York, as well as by marketing, distributing and/or selling the Infringing "BEN & CHERRY'S" DVDs, either directly or through one or both of the Corporate Defendants, throughout the United States, including in New York, through Defendants' websites, third-party websites and/or distributors, some of which are located in New York, Defendant Mamane has availed himself of the benefits of doing business in New York, such that Defendant Mamane may reasonably anticipate being brought into a New York court.

3

8.     This Court has personal jurisdiction over Defendant Yoffe because, upon information and belief, he maintains substantial contacts with New York and actively controls and/or directs, in whole or in part, the activities of the Corporate Defendants, including the activities and operations of the Corporate Defendants complained of herein.

9.     This Court also has personal jurisdiction over Defendant Yoffe because he purposefully availed himself of the laws of New York.  By operating, either directly or through one or both of the Corporate Defendants, one or more interactive websites which make the Infringing "BEN & CHERRY'S" DVDs available to anyone with access to an Internet connection, including computer users in New York, as well as by marketing, distributing and/or selling the Infringing "BEN & CHERRY'S" DVDs, either directly or through one or both of the Corporate Defendants, throughout the United States, including in New York, through Defendants' websites, third-party websites and/or distributors, some of which are located in New York, Defendant Yoffe has availed himself of the benefits of doing business in New York, such that Defendant Yoffe may reasonably anticipate being brought into a New York court.

10.     Moreover, upon information and belief, all of the Corporate Defendants' activities and operations are controlled in whole or in part by Defendant Mamane and Defendant Yoffe, who further benefit from the activities of the Corporate Defendants.  As such, Mamane and Yoffe are the alter egos of the Corporate Defendants.

11.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

PARTIES

12.     Plaintiff Ben & Jerry's Homemade, Inc. ("Ben & Jerry's") is a corporation duly organized and existing under the laws of Vermont with offices at 30 Community Drive, South Burlington, Vermont 05403.

13.     Plaintiff Conopco, Inc. d/b/a Unilever ("Conopco") is a corporation duly organized and existing under the laws of New York with offices at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  Conopco is the parent company of Plaintiff Ben & Jerry's

and participates in the marketing and distribution of BEN & JERRY'S® products (Plaintiffs Ben & Jerry's and Conopco are hereinafter referred to collectively as "Plaintiffs.")

14.    Upon information and belief, Defendant Rodax is a corporation duly organized and existing under the laws of California, having its principal place of business at 7230 Coldwater Canyon Avenue, North Hollywood, CA 91605.

15.    Upon information and belief, Defendant Morris is a corporation duly organized and existing under the laws of California, having its principal place of business at 7230 Coldwater Canyon Avenue, North Hollywood, CA  91605.

16.    Upon information and belief, Defendant Mamane is the President of Rodax and of Morris and controls and/or directs, in whole or in part, the activities and operations of Rodax and Morris, including those activities and operations complained of herein.  Upon information and belief, Defendant Mamane maintains a residential address in Beverly Hills, California.

17.    Upon information and belief, Defendant Yoffe is the President and Chief Operating Officer of Rodax and of Morris and controls and/or directs, in whole or in part, the activities and operations of Rodax and Morris, including those activities and operations complained of herein.  Upon information and belief, Defendant Yoffe maintains a residential address in Sherman Oaks, California.

<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

A.    <u>Plaintiff's Activities</u>

18.    Plaintiff Ben & Jerry's is a premier producer and seller of ice cream, frozen confections, frozen yogurt and sorbet.  For almost 35 years, beginning since at least 1978, Plaintiff Ben & Jerry's and its predecessors have continuously sold and advertised, and continue to sell and advertise, their ice cream, frozen confections, frozen yogurt and sorbet under the distinctive BEN & JERRY'S® Mark in interstate commerce throughout the United States.  The famous BEN & JERRY'S® Mark has consistently and continuously appeared on product packaging, advertising, promotional materials, displays and the like.

19.     Plaintiffs' BEN & JERRY'S® products are currently available and sold to consumers throughout this District, this State and the United States, as well as various other countries.

20.     Since long prior to the acts of Defendants complained of herein, Plaintiffs have operated, and continue to operate, both directly and through their franchisees, ice cream parlor shops under the famous BEN & JERRY'S®  trademark ("BEN & JERRY'S® Scoop Shops").

21.     There are over 300 BEN & JERRY'S® Scoop Shops selling BEN & JERRY'S® products in the United States and over 150 BEN & JERRY'S® Scoop Shops selling BEN & JERRY'S® products internationally.

22.     Since long prior to the acts of Defendants complained of herein, Plaintiffs have also marketed, distributed and sold, and continue to market, distribute and sell, their BEN & JERRY'S® brand ice cream products in, among other channels, supermarkets, superstores, drugstores, delis, entertainment venues, ice cream carts, and through online retailers.

23.     Plaintiff Ben & Jerry's is the owner of the following registrations on the Principal Register of the United States Patent and Trademark Office for its trademark BEN & JERRY'S® (collectively, the "BEN & JERRY'S® Marks"), five of which are incontestable by operation of law:

| Mark | Registration Number | Registration Date | Goods and Services |
|------|---------------------|-------------------|--------------------|
| BEN & JERRY'S | 1,303,989 | November 6, 1984 | IC 30 - ice cream |
| BEN & JERRY'S | 1,946,739 | January 9, 1996 | IC 30 - frozen yogurt |
| BEN & JERRY'S | 1,961,757 | March 12, 1996 | IC 42 - frozen confection store services |

| Mark | Registration Number | Registration Date | Goods and Services |
|------|--------------------|--------------------|--------------------|
| BEN & JERRY'S & Design | 2,203,988 | November 17, 1998 | IC 30 – ice cream, frozen yogurt, sorbet and frozen confections |
| BEN & JERRY'S | 2,356,311 | June 6, 2000 | IC 28 -. toys, namely, stuffed toys, *and * toy wheeled vehicles, [ and jigsaw puzzles ]. |
| BEN & JERRY'S | 3,336,158 | November 13, 2007 | IC 29 - dairy-based beverages |

These incontestable registrations serve as conclusive evidence of Ben & Jerry's exclusive right to use the BEN & JERRY'S® Mark on the goods specified therein.  Copies of the Certificates of Registration are annexed hereto as Exhibit 1 and incorporated herein by reference.

24.     Plaintiff Ben & Jerry's is also the owner of the following incontestable trademark registration on the Principal Register of the United States Patent and Trademark Office:

| Mark | Registration Number | Registration Date | Goods and Services |
|------|--------------------|--------------------|--------------------|
| VERMONT'S FINEST | 2,145,985 | March 24, 1998 | IC 30- Ice cream, frozen yogurt, sorbet and frozen confections |

This incontestable registration serves as conclusive evidence of Ben & Jerry's exclusive right to use the VERMONT'S FINEST® trademark ("VERMONT'S FINEST® Mark") on the goods specified therein.  A copy of the Certificate of Registration is annexed hereto as Exhibit 2 and incorporated herein by reference.

25.     Plaintiff Ben & Jerry's also owns or is the exclusive licensee of the following incontestable trademark registrations on the Principal Register of the United States Patent and Trademark Office for the names of some of its most popular ice cream flavors (BEN &

JERRY'S® "Flavor Marks"), all of which are used in connection with the famous BEN & JERRY'S® Mark:

| Mark | Registration Number | Registration Date | Goods and Services |
|------|--------------------|--------------------|---------------------|
| AMERICONE | 1,677,799 | March 3, 1992 | IC 30- ice cream and ice milk cones |
| CHERRY GARCIA | 1,460,269 | October 6, 1987 | IC 30- ice cream |
| CHERRY GARCIA | 2,076,717 | July 8, 1997 | IC 30- frozen yogurt |
| EVERYTHING BUT THE... | 2,440,823 | April 3, 2001 | IC 30- ice cream |
| NEW YORK SUPER FUDGE CHUNK | 2,035,273 | February 4, 1997 | IC 30- frozen confections |

These incontestable registrations serve as conclusive evidence of Ben & Jerry's' exclusive right to use the BEN & JERRY'S® Flavor Marks on the goods specified therein. Copies of the Certificates of Registration are annexed as Exhibit 3 and incorporated herein by reference. The BEN & JERRY'S® Mark, the VERMONT'S FINEST® Mark and the BEN & JERRY'S® Flavor Marks are collectively referred to herein as the "BEN & JERRY'S® Family of Marks."

26.     The famous BEN & JERRY'S® Family of Marks have appeared, and continue to appear, on product packaging, retail stores, advertising, promotional materials, displays and the like.

27.     Plaintiffs market, distribute and sell their BEN & JERRY'S® brand ice cream products bearing the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress (as hereinafter defined) in, among other channels, supermarkets, superstores, drugstores, and through online retailers in Plaintiffs' famous and distinctive product packaging.

28.     The BEN & JERRY'S® Trade Dress is an inherently distinctive product packaging which is comprised of the following original and distinctive elements: (a) a colorful and distinctive backdrop depicting a sunny day with a light blue sky, large white puffy clouds

and black and white cows grazing on green grass ("Cow Design"); (b) the distinctive BEN & JERRY'S® logo, which consists of (i) a unique rectangular shield device, with the middle portion of the top side raised, resembling a store sign ("Shield Device"), featuring the BEN & JERRY'S® Mark at the center, (ii) the BEN & JERRY'S® Mark printed in a distinctive, stylized typeface featuring capital white lettering ("BEN & JERRY'S® Typeface") against a black backdrop, (iii) the VERMONT'S FINEST® Mark, which appears above the BEN & JERRY'S® Mark depicted in yellow initial capital lettering against a black backdrop and (iv) the term "Ice Cream", which appears beneath the BEN & JERRY'S® Mark depicted in black capital lettering against a yellow backdrop ("BEN & JERRY'S® Logo"), and (c) a container lid with a black rim ("Lid Rim").  Below are detailed illustrations of the BEN & JERRY'S® Trade Dress and the BEN & JERRY'S® Logo.



9



Copies of digital photographs of the front, back and top of a pint of Plaintiffs' BEN & JERRY'S® ice cream product featuring the BEN & JERRY'S® Trade Dress and BEN & JERRY'S® Logo are annexed hereto as Exhibit 4 and incorporated herein by reference.

29.     The famous and inherently distinctive BEN & JERRY'S® Trade Dress is not functional, and serves to readily distinguish Plaintiffs' BEN & JERRY'S® products and services from those of their competitors.

30.     Plaintiffs have sold their line of ice cream products bearing the BEN & JERRY'S® Trade Dress in substantially the same form since at least as early as 1999, with the most significant difference being that in 2010, the BEN & JERRY'S® Logo was modified slightly so that the position of the VERMONT'S FINEST® Mark was moved from beneath the BEN & JERRY'S® Mark to above the BEN & JERRY'S® Mark, and the words "Ice Cream" were added beneath the BEN & JERRY'S® Mark.

31.     Plaintiffs' BEN & JERRY'S® Scoop Shops also prominently feature the BEN & JERRY'S® Family of Marks and significant elements of the BEN & JERRY'S® Trade Dress on signage, cups, point of sale displays and other related materials.

32.     Over the years, the volume of goods sold under the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress has been enormous.  Plaintiffs' BEN & JERRY'S® brand of ice cream, frozen confections, frozen yogurt and sorbet products are always among the best-selling brands for these products. Sales of BEN & JERRY'S® products from 2009 through August 4, 2012 amounted to more than one billion six hundred sixty million dollars. Indeed, just in the 52 weeks ending August 4, 2012, Plaintiffs' BEN & JERRY'S® brand was among the highest sellers in the ice cream category with 5.2% of the market share and sales of more than five hundred thirty-eight million dollars. For the past three years, an average of 15.2 million gallons of Plaintiffs' BEN & JERRY'S® packaged ice cream and 2.9 million cases of BEN & JERRY'S® ice cream novelties have been sold each year, with average annual sales of 493 million dollars in each of those years.

33.     The extraordinary and longstanding success of Plaintiffs' BEN & JERRY'S® brand products over the past 35 years has fostered wide renown and fame with the trade and public.  Moreover, the products sold under the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress have achieved a reputation for being of the highest quality.  As a result of such success, and the long, continuous and exclusive use of the BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress in connection with the marketing and sale of ice cream, frozen confections, frozen yogurt and sorbet products, consumers have come to recognize the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress, associate it solely with Plaintiffs and know that BEN & JERRY'S® products and services will be of the highest quality.

34.     Since at least as early as April 1985, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the NEW YORK SUPER FUDGE CHUNK® trademark.  The NEW YORK SUPER FUDGE CHUNK® trademark has been registered in the United States

Patent and Trademark Office since February 1997.  Since 2009 alone, Plaintiffs' sales of their NEW YORK SUPER FUDGE CHUNK® ice cream have been well  in excess of fifty million dollars, representing almost two million gallons of packaged ice cream.

35.     Since at least as early as February 1987, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the trademark CHERRY GARCIA®, which Plaintiffs use under license from the successors to the estate of the famous, former member of the Grateful Dead, Jerry Garcia.  The CHERRY GARCIA® trademark has been registered in the United States Patent and Trademark Office since October 6, 1987.  Since 2009 alone, Plaintiffs' sales of their CHERRY GARCIA® ice cream have exceeded two hundred fifteen million dollars, representing almost six million gallons of packaged ice cream and more than two million cases of ice cream novelty items (representing more than 26 million individual novelty items)—making CHERRY GARCIA® one of Plaintiffs' most popular flavors and one of the best-selling ice cream flavors in the United States.

36.     Since March 1992, Plaintiffs and their predecessors in interest have owned a registration in the United States Patent and Trademark Office for the mark AMERICONE® in connection with ice cream.  Plaintiffs have, since 2007, manufactured and sold a flavor of ice cream under the trademark AMERICONE DREAM™.  Since 2009 alone, sales of their AMERICONE DREAM™ ice cream have  been in excess of sixty million dollars, representing almost one million nine hundred thousand gallons of packaged ice cream and more than two hundred thousand cases of novelty items (representing more than 2.4 million individual novelty items).

37.     Since at least as early as January 2000, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the trademark EVERYTHING BUT THE . . .®. The EVERYTHING BUT THE . . .® trademark has been registered in the United States Patent and Trademark Office since April 3, 2001. Since 2009 alone, Plaintiffs' sales of EVERYTHING BUT THE. . .® ice cream have been in excess of forty million dollars, representing more than one million gallons of packaged ice cream.

38.     Since 2010, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the trademark LATE NIGHT SNACK™.  Since 2010, sales of LATE NIGHT SNACK™ ice cream have been in excess of fourteen million dollars, representing almost four hundred seventy thousand gallons of packaged ice cream.

39.     Plaintiffs have also for many years manufactured, distributed and sold, and continue to manufacture, distribute and sell, ice cream under the flavor names "Banana Split", "Boston Cream Pie", "Peanut Butter Cup", "Coconut Seven Layer Bar" and "Chocolate Fudge Brownie" ("Other BEN & JERRY'S® Flavor Names").

40.     Plaintiffs and their predecessors have invested enormous amounts of time, effort and many millions of dollars developing and marketing their products and services, and the BEN & JERRY'S® Family of Marks, the Other BEN & JERRY'S® Flavor Names and the BEN & JERRY'S® Trade Dress used in connection therewith.  The BEN & JERRY'S® Family of Marks, the Other BEN & JERRY'S® Flavor Names and the BEN & JERRY'S® Trade Dress, and the artwork used in connection therewith are hereinafter collectively referred to as the "BEN & JERRY'S® Intellectual Property."

41.     Plaintiffs continuously advertise and promote the BEN & JERRY'S® Intellectual Property and the products sold thereunder in a wide variety of national media, including, but not limited to, nationally circulated newspapers and magazines.  Plaintiffs have also advertised their BEN & JERRY'S® brand products on the radio and on major television broadcast and cable networks.  As a consequence of their continuous and extensive advertising of the BEN & JERRY'S® products, Plaintiffs have developed the BEN & JERRY'S® Family of Marks into a master brand franchise, with extensions into such related product segments as frozen confections, frozen yogurts and sorbets.

42.     For example, last year, Plaintiffs' advertising expenditures for their BEN & JERRY'S® ice cream products was over $15 million, garnering more than 5 billion consumer impressions.

43.     Plaintiffs also operate a website at the domain name address
http://www.benjerry.com (the "BEN & JERRY'S® Website"), which serves to provide product
information and regularly advertise and promote their BEN & JERRY'S® products and the BEN
& JERRY'S® Intellectual Property. Print-outs of screen snapshots of Plaintiffs' BEN &
JERRY'S® Website are annexed hereto as Exhibit 5 and incorporated herein by reference.

44.     As a result of Plaintiffs' time, effort, widespread promotion and advertising, and
the enormous amount of money spent by Plaintiffs developing, marketing, advertising and
promoting the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress,
the BEN & JERRY'S® Intellectual Property has acquired and maintains an outstanding fame
symbolizing tremendous and material goodwill of Plaintiffs throughout the United States and the
world.

45.     The BEN & JERRY'S® Mark, the BEN & JERRY'S® Family of Marks, the
BEN & JERRY'S® Trade Dress and the BEN & JERRY'S® Intellectual Property have all
acquired enormous value and have become extremely famous to the consuming public and trade
as identifying and distinguishing Plaintiffs' BEN & JERRY'S® products and services from those
of their competitors.

B.    Defendants' Unlawful Activities

46.     Upon information and belief, Defendants Rodax, Morris and Yoffe manufacture,
market, distribute and sell exploitative, hardcore, pornographic movies and products.

47.     Upon information and belief, Defendants recently released, without the
permission or authorization of Plaintiffs, a series of ten Infringing "BEN & CHERRY'S" DVDs
featuring pornographic films marketed throughout the country and around the world under the
confusingly similar name "BEN & CHERRY'S".

48.     The name "BEN & CHERRY'S" is virtually identical to Plaintiffs' famous BEN
& JERRY'S® Mark, except that the name "Cherry's" has been substituted for the name
"Jerry's."

49.     The name "Cherry's" is visually and phonetically similar to the name "Jerry's".

14

50.     Defendants' Infringing "BEN & CHERRY'S" DVDs feature a logo that is almost identical to Plaintiffs' BEN & JERRY'S® Logo.

51.     Defendants' Infringing "BEN & CHERRY'S" DVDs bear labels ("Infringing Labels") and are marketed in product packaging ("Infringing Product Packaging") which feature simulations, confusingly similar variations, or colorable imitations of the BEN & JERRY'S® product packaging, and include distinctive and protectable elements of the BEN & JERRY'S® Trade Dress.

52.     Defendants' Infringing "BEN & CHERRY'S" DVDs feature titles and themes that are based on and deliberately trade upon the famous BEN & JERRY'S® Flavor Marks and upon the Other BEN & JERRY'S® Flavor Names.  A side-by-side comparison of the titles of the Infringing "BEN & CHERRY'S" DVDs and the BEN & JERRY'S® ice cream flavor names follows:

- Americone Cream (Americone Dream™),
- Boston Cream Thigh (Boston Cream Pie)
- Banana Clit (Banana Split)
- Coconut 7 Lay-Her Bar (Coconut Seven Layer Bar)
- Chocolate Fudge Babes (Chocolate Fudge Brownie)
- Everything But The . . . Butt (Everything But the . . .®)
- Late Night Snatch (Late Night Snack™)
- Hairy Garcia (Cherry Garcia®)
- New York  Super Fat & Chunky (New York Super Fudge Chunk®)
- Peanut Butter D-Cups (Peanut Butter Cup)

Digital representations of the covers of Defendants' Infringing "BEN & CHERRY'S" DVDs are annexed as Exhibit 6 and incorporated herein by reference.

53.     The Infringing Product Packaging and Infringing Labels mimic and imitate Plaintiffs' BEN & JERRY'S® Trade Dress and feature graphics  which appear on the product packaging for Plaintiffs' corresponding BEN & JERRY'S® flavors.  The Infringing "BEN & CHERRY'S" DVDs, the Infringing Labels and the Infringing Product Packaging are collectively referred to herein as the "Infringing Materials". Digital representations of the Infringing "BEN & CHERRY'S" DVDs bearing the Infringing Labels are annexed as Exhibit 7 and incorporated herein by reference.

54.     As just one example of Defendants' improper, infringing and dilutive conduct, set
forth below is an illustrated side-by-side comparison of the BEN & JERRY'S® Trade Dress
used on the packaging for its Banana Split ice cream product and the corresponding Infringing
Product Packaging used in connection with Defendants' Infringing "BEN & CHERRY'S" DVD
entitled "Banana Clit", as well as a side-by-side comparison of the BEN & JERRY'S® Logo and
the logo used on the Infringing "BEN & CHERRY'S" DVDs, which evidences Defendants'
blatant and outrageous copying and misappropriation of the BEN & JERRY'S® Intellectual
Property:

## Product Packaging Comparison



**Logo Comparison**



55.    Upon information and belief, Defendants manufacture, market, distribute and sell their pornographic Infringing "BEN & CHERRY'S" DVDs in the Infringing Product Packaging through their interactive online pornography stores located, inter alia, at http://www.caballerovip.com and http://www.bestdvdz.com under several company names including: Homemade Amateur, Fever Films, Blue Pictures, Caballero Classics, Caballero Video, Vertigo, XOXO Pictures, Maverick, Avalon Productions, Barracuda Films, Garden of Eden J.A.P. (Just Adult Products) and Swedish Erotica, throughout the United States and around the world.

56.    Upon information and belief, when consumers access http://www.caballerovip.com, and click "retail," they are redirected to the http://www.bestdvdz.com websites, where consumers can purchase and download pornographic videos.  A print-out of Defendants' http://www.caballerovip.com and http://www.bestdvdz.com websites is annexed as Exhibit 8 and incorporated herein by reference.

17

57.     Upon information and belief, Defendants market, distribute and sell the Infringing "BEN & CHERRY'S" DVDs in the Infringing Product Packaging through their interactive online website, product catalogue, distribution arm and other third-party websites, distributors and retailers.

58.     Upon information and belief, the following distributors of the Infringing "BEN & CHERRY'S" DVDs, *inter alia*, are located in New York: Koe Distributors, with an address 173 2nd Avenue, Brooklyn, NY 11215, with a telephone number of 718-832-3506 and Model Magazine Distributors, Inc., d/b/a Model Distributors, which is located at 318 West 39th Street, New York, NY 10018, with a telephone number of 212-727-0390.

59.     Upon information and belief, Model Magazine Distributors, Inc. distributes all of the Infringing "BEN & CHERRY'S" DVDs.

60.     Upon information and belief, one or both of the Corporate Defendants has/have a warehouse located at 7230 Coldwater Canyon Avenue, North Hollywood, CA 91605, which includes its/their own in-house replicating company and printing company.

61.     Upon information and belief, one or both of the Corporate Defendants is/are the worldwide distributors of the Infringing "BEN & CHERRY'S" DVDs and manufacture(s), market(s), distribute(s) and sell(s) such products throughout this District, this state, the United States and around the world.

62.     Upon information and belief, Defendants produce the Infringing Labels and the Infringing Packaging within the United States for use on and in connection with the marketing, advertising, promotion, distribution and sale of the Infringing "BEN & CHERRY'S" DVDs both within the United States and outside the United States.

63.     Upon information and belief, Defendants produce the Infringing "BEN & CHERRY'S" DVDs bearing the Infringing Labels and package the Infringing "BEN & CHERRY'S" DVDs in the Infringing Product Packaging within the United States, and market, advertise, promote, distribute and sell such Infringing "BEN & CHERRY'S" DVDs both within the United States and outside the United States.

64.     Defendants' production, marketing, advertising, promotion, distribution and sale of the Infringing "BEN & CHERRY'S" DVDs bearing the Infringing Labels in the Infringing Product Packaging outside the United States substantially affects commerce within the United States by virtue of the fact that the Infringing "BEN & CHERRY'S" DVDs, the Infringing Labels and the Infringing Product Packaging are, upon information and belief, manufactured and produced within the United States.

65.     Defendants' production, marketing, advertising, promotion, distribution and sale of the Infringing "BEN & CHERRY'S" DVDs bearing the Infringing Labels in the Infringing Product Packaging outside the United States substantially affects commerce within the United States by virtue of the fact that Defendants' activities adversely affect the reputation and goodwill of Plaintiffs within the United States.

66.     Defendants' production, marketing, advertising, promotion, distribution and sale of the Infringing "BEN & CHERRY'S" DVDs bearing the Infringing Labels in the Infringing Product Packaging outside the United States substantially affects commerce within the United States by virtue of the fact that there is a substantial risk that Infringing "BEN & CHERRY'S" DVDs sold by Defendants outside the United States could re-enter the United States and cause further damage to the reputation and goodwill of Plaintiffs within the United States and could additionally cause consumer confusion as to the source of such Infringing "BEN & CHERRY'S" DVDs.

67.     Upon information and belief, Defendants can claim no rights to any of the Infringing Materials in any country outside the United States which are in conflict with the rights of Plaintiffs to the BEN & JERRY'S® Intellectual Property asserted herein.

68.     Despite being put on constructive notice of Plaintiffs' rights in their famous and registered BEN & JERRY'S® Family of Marks by way of Plaintiffs' numerous incontestable United States trademark registrations for their BEN & JERRY'S® Family of Marks, Defendants nonetheless willfully diluted and infringed, and continue to willfully dilute and infringe, Plaintiffs' BEN & JERRY'S® Family of Marks by using variations, simulations, or colorable

imitations of such marks on their Infringing "BEN & CHERRY'S" DVDs in violation of Plaintiffs' rights.

69.     Upon information and belief, Defendants have adopted, commenced use of and are using and planning to use the Infringing Materials with the intent and purpose of commercially exploiting and trading upon the fame, recognition, reputation and extensive goodwill built up by Plaintiffs in the BEN & JERRY'S® Intellectual Property and to reap the benefits of years of effort and investment by Plaintiffs to create public recognition of the BEN & JERRY'S® Intellectual Property.  Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

70.     Defendants' acts  complained of herein have been committed with knowledge that such acts are intended to cause confusion, or to cause mistake, or to deceive.

71.     Defendants' adoption and use of the Infringing Materials in connection with the sale of Defendants' hardcore, exploitive pornographic Infringing "BEN & CHERRY'S" DVDs and related goods and/or services is likely to cause confusion in the minds of consumers because consumers will mistakenly believe that Defendants' Infringing "BEN & CHERRY'S" DVDs and related products and/or services are affiliated with Plaintiffs' BEN & JERRY'S® products and/or services.

72.     Defendants' adoption and use of the Infringing Materials in connection with the sale of the hardcore and exploitive pornographic Infringing "BEN & CHERRY'S" DVDs and related goods and/or services is  likely to tarnish the BEN & JERRY'S® Family of Marks by creating an association of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress with pornography. Such an association will undermine and damage the substantial goodwill and reputation associated with Plaintiffs and their BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress and BEN & JERRY'S® products, which Plaintiffs have spent many years and many millions of dollars to develop, and will dilute the distinctiveness of the BEN & JERRY'S® Family of Marks and Trade Dress.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK DILUTION (15 U.S.C. §1125(c)(1))**

73.     Plaintiffs reallege paragraphs 1 through 72 above and incorporate them by reference as if fully set forth herein.

74.     By reason of Plaintiffs' continuous and extensive use of the BEN & JERRY'S® Mark and the products sold in connection therewith, the BEN & JERRY'S® Mark has become famous and highly distinctive, and uniquely associated with Plaintiffs and their BEN & JERRY'S® brand products.

75.     Defendants' above-described actions, which occurred after the BEN & JERRY'S® Mark acquired fame, have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous BEN & JERRY'S® Mark by destroying the exclusive association between such mark and Plaintiffs' and their  goods exclusively.

76.     Defendants' above-described actions, which occurred after the BEN & JERRY'S® Mark acquired fame, have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish, the valuable BEN & JERRY'S® Mark by undermining and damaging the valuable goodwill and reputation associated therewith.

77.     Defendants' aforesaid actions are intentional and in violation of Section 43(c)(1) of the Trademark Act, 15 U.S.C. § 1125(c)(1), and have already caused Plaintiffs irreparable damage and will, unless restrained, continue to so damage Plaintiffs, all of which have no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**FEDERAL TRADE DRESS DILUTION (15 U.S.C. §1125(c)(1))**

78.     Plaintiffs reallege paragraphs 1 through 77 above and incorporate them by reference as if fully set forth herein.

79.     By reason of Plaintiffs' continuous and extensive use and advertising of the BEN & JERRY'S® Trade Dress and the products sold in connection therewith, the BEN &

JERRY'S® Trade Dress has become famous and highly distinctive of, and uniquely associated with, Plaintiffs and their BEN & JERRY'S® brand products.

80.     The BEN & JERRY'S® Trade Dress is non-functional and inherently distinctive.

81.     Defendants' above-described actions, which occurred after the BEN & JERRY'S® Trade Dress acquired fame, have diluted and will, unless restrained, continue to dilute and are likely to dilute the distinctive quality of the famous BEN & JERRY'S® Trade Dress by destroying the exclusive association between such trade dress and Plaintiffs' goods, and/or otherwise lessening the capacity of the BEN & JERRY'S® Trade Dress to identify Plaintiffs and their BEN & JERRY'S® brand goods exclusively.

82.     Defendants' above-described actions, which occurred after the BEN & JERRY'S® Trade Dress acquired fame, have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish, the valuable BEN & JERRY'S® Trade Dress by undermining and damaging the valuable goodwill and reputation associated therewith.

83.     Defendants' aforesaid actions are intentional and in violation of Section 43(c)(1) of the Trademark Act, 15 U.S.C. § 1125(c)(1), and have already caused Plaintiffs irreparable damage and will, unless restrained, continue to so damage Plaintiffs, all of which have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

84.     Plaintiffs reallege paragraphs 1 through 83 above and incorporate them by reference as if fully set forth herein.

85.     Defendants' use of a copy, variation, simulation or colorable imitation of Plaintiffs' BEN & JERRY'S® Family of Marks in connection with their sale of hardcore pornographic DVDs infringes Plaintiffs' exclusive rights in their federally registered marks, is likely to cause confusion, mistake, or deception, and constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

86.     Defendants have used copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks with full knowledge of Plaintiffs' longstanding and extensive prior use of the BEN & JERRY'S® Family of Marks.

87.     Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## FEDERAL TRADE DRESS INFRINGEMENT (15 U.S.C. §1125(a)(1))

88.     Plaintiffs reallege paragraphs 1 through 87 above and incorporate them by reference as if fully set forth herein.

89.     Plaintiffs' BEN & JERRY'S® Trade Dress is non-functional and inherently distinctive.

90.     Among the consuming public, Plaintiff Ben & Jerry's BEN & JERRY'S® Trade Dress has acquired distinctiveness as an exclusive indicator of source for Plaintiffs and their BEN & JERRY'S® brand products.

91.     Defendants' use of a copy, variation, simulation or colorable imitation of the BEN & JERRY'S® Trade Dress in connection with Defendants' pornographic Infringing "BEN & CHERRY'S" DVDs and/or other products infringes Plaintiffs' exclusive rights in the BEN & JERRY'S® Trade Dress, is likely to cause confusion, mistake, or deception, and constitutes trade dress infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

92.     Defendants' selection, incorporation and use of protected elements of the BEN & JERRY'S® Trade Dress, and/or copies, variations, simulations or colorable imitations thereof, on the product packaging and labels of Defendants' Infringing "BEN & CHERRY'S" DVDs were made with full knowledge of Plaintiffs' longstanding and extensive prior use of the BEN & JERRY'S® Trade Dress.

93.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, and to their goodwill and reputation, and will continue both to damage Plaintiffs and to confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a)(1))

94.    Plaintiffs reallege paragraphs 1 through 93 above and incorporate them by reference as if fully set forth herein.

95.    Defendants' use of copies, variations, simulations or colorable imitations of Plaintiff Ben & Jerry's registered BEN & JERRY'S® Family of Marks and of the BEN & JERRY'S® Trade Dress in connection with their sale of the Infringing "BEN & CHERRY'S" DVDs and/or related products and services constitutes a false designation of origin, a false description and representation of Defendants' goods and/or services and a false representation that Defendants' products and/or services are sponsored, endorsed, licensed or authorized by, or otherwise affiliated or connected with, Plaintiffs.

96.    Defendants' use of copies, variations, simulations or colorable imitations of Plaintiff Ben & Jerry's registered BEN & JERRY'S® Family of Marks and of the BEN & JERRY'S® Trade Dress in connection with their sale of the Infringing "BEN & CHERRY'S" DVDs and/or related products and services infringes Plaintiff Ben & Jerry's exclusive rights in the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress, is likely to cause confusion, mistake, or deception, and constitutes unfair competition, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

97.    Upon information and belief, Defendants used copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress with full knowledge of Plaintiffs' longstanding and extensive prior use of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress.

98.    Upon information and belief, Defendants knowingly adopted and used copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks and

the BEN & JERRY'S® Trade Dress with full knowledge of Plaintiffs' longstanding and extensive prior use of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress.

99.     Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

100.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, and to their valuable goodwill and reputation, and will continue both to damage Plaintiffs and to confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

<u>**SIXTH CLAIM FOR RELIEF**</u>
<u>**COMMON LAW UNFAIR COMPETITION**</u>

101.    Plaintiffs reallege paragraphs 1 through 100 above and incorporate them by reference as if fully set forth herein.

102.    Upon information and belief, Defendants were aware of Plaintiffs' prior use of the BEN & JERRY'S® Intellectual Property, and adopted and used the Infringing Materials (including, but not limited to, the infringing BEN & CHERRY'S name, as well as copies, variations, simulations or colorable imitations of protected elements of the BEN & JERRY'S® Trade Dress) in disregard of Plaintiffs' rights in their valuable BEN & JERRY'S® Intellectual Property.

103.    Upon information and belief, Defendants were aware of Plaintiffs' prior use of the BEN & JERRY'S® Intellectual Property, and adopted and used copies, variations, simulations or colorable imitations of the Other BEN & JERRY'S® Flavor Names (i.e., Americone Cream, Boston Cream Thigh, Banana Clit, Hairy Garcia, Chocolate Fudge Babes, Everything But The. . . Butt, Late Night Snatch, New York  Super Fat & Chunky, Peanut Butter D-Cups and Coconut 7 Lay-Her Bar (collectively, the "Infringing Flavor Names"), in disregard of Plaintiffs' rights in their valuable BEN & JERRY'S® Intellectual Property.

104.     Upon information and belief, Defendants' use of the Infringing Materials and the Infringing Flavor Names has resulted in the misappropriation of and trading upon Plaintiffs' valuable goodwill and business reputation at Plaintiffs' expense and at no expense to Defendants. The effect of Defendants' misappropriation of the goodwill symbolized by the BEN & JERRY'S® Intellectual Property is likely to unjustly enrich Defendants, damage Plaintiffs and confuse and/or deceive the public.

105.     Defendants' conduct constitutes unfair competition with Plaintiffs, which has caused and will continue to cause irreparable injury to Plaintiffs' goodwill and reputation unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
## DILUTION AND INJURY TO BUSINESS REPUTATION
### (N.Y. General Business law §360-l)

106.     Plaintiffs reallege paragraphs 1 through 105 above and incorporate them by reference as if fully set forth herein.

107.     Defendants' use of  copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress has caused and will continue to cause the dilution of the distinctive quality of the BEN & JERRY'S® Intellectual Property, resulting in injury to Plaintiffs' business reputation.

108.     Defendants' use of copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress in connection with goods and services not controlled or subject to control by Plaintiffs has caused and will continue to cause dilution and/or injury to the reputation of the Plaintiffs and Plaintiffs' goods.

109.     Defendants' adoption and use of copies, variations, simulations or colorable imitations of the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress in connection with the sale of the hardcore pornographic Infringing "BEN & CHERRY'S" DVDs and/or related goods and/or services is likely to tarnish the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress as a result of the association with pornography,

thereby diluting the distinctiveness of and tarnishing the reputation associated with the famous BEN & JERRY'S® Family of Marks and the Ben & JERRY'S® Trade Dress and undermining and damaging the goodwill associated therewith.

110.    By reason of the foregoing, Plaintiffs are entitled to injunctive relief under New York General Business Law §360-m.

## EIGHTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES (N.Y. General Business Law § 349)

111.    Plaintiffs reallege paragraphs 1 through 110 above and incorporate them by reference as if fully set forth herein.

112.    By reason of the acts and practices set forth above, Defendants have and are engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

113.    The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by the Defendants.

114.    Unless enjoined by the Court, Defendants will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to the Plaintiffs.  The Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment as follows:

1.    Preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants from:

        (a)    manufacturing, selling, distributing, advertising, promoting or authorizing any third party to manufacture, sell, distribute, advertise or promote the Infringing "BEN & CHERRY'S" DVDs or any other materials that violate Plaintiffs' intellectual property rights;

(b)   using or authorizing any third party to use the BEN & JERRY'S® Family

of Marks and/or the BEN & JERRY'S® Trade Dress, the Other BEN &

JERRY'S® Flavor Names, "Ben & Cherry's", the Infringing Flavor

Names, or the Infringing Materials as a trademark, service mark, domain

name, business name, trade name or symbol of origin and/or from using

any counterfeit, copy, simulation, confusingly similar variation, or

colorable imitation of any of the BEN & JERRY'S® Family of Marks

and/or the BEN & JERRY'S® Trade Dress and/or the Other BEN &

JERRY'S® Flavor Names in any manner or form, on or in connection

with any business, products or services, or in the marketing, advertising

and promotion of same;

(c)   imitating, copying or making any unauthorized use of the marks, items or

elements comprising the BEN & JERRY'S® Family of Marks, the BEN &

JERRY'S® Trade Dress and/or the Other BEN & JERRY'S® Flavor

Names, or any copy, simulation, variation or colorable imitation thereof;

(d)   making or displaying any statement or representation that is likely to lead

the public or the trade to believe that Defendants' products or services are

in any manner associated or affiliated with or approved, endorsed,

licensed, sponsored, authorized or franchised by or are otherwise

connected with Plaintiffs;

(e)   using or authorizing any third party to use in connection with the

rendering, offering, advertising, or promotion of any business, goods or

services, any false description, false representation, or false designation of

origin, or any marks, names, words, symbols, devices or trade dress which

falsely associate such business, goods and/or services with Plaintiffs or

tend to do so;

(f)    diluting the distinctive quality of the marks, items or elements comprising the BEN & JERRY'S® Family of Marks,  the BEN & JERRY'S® Trade Dress and/or the Other BEN & JERRY'S® Flavor Names;

(g)    registering or applying to register as a trademark, service mark, domain name, trade name or other source identifier or symbol of origin any mark, trade name, trade dress or name incorporating the marks, items or elements comprising the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress and/or the Other BEN & JERRY'S® Flavor Names, the term "Ben & Cherry's", the Infringing Materials, the Infringing Flavor Names, or any other mark, logo or domain name that infringes on or is likely to be confused with the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress and/or the Other BEN & JERRY'S® Flavor Names, Plaintiffs, or any products or services of Plaintiffs;

(h)    engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the  BEN & JERRY'S® Intellectual Property, or of Plaintiffs' rights therein;

(i)    aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (h).

2.    Requiring Defendants to formally abandon with prejudice any and all applications to register any trademark or service mark consisting of, or containing, "BEN & CHERRY'S" or any of the Infringing Flavor Names, either alone or in combination with other words and/or designs.

3.    Requiring Defendants to immediately cease all distribution, marketing, sale and/or use of any and all products, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays or other related materials that feature or bear any designation or mark incorporating any of the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S®

Trade Dress, the Other BEN & JERRY'S® Flavor Names, "BEN & CHERRY'S", the Infringing Flavor Names or any of the Infringing Materials, or any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation thereof, and to direct all of their distributors, retail establishments and/or wholesale establishments wherever located in the United States to cease forthwith the distribution and/or sale of any and all products, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays and/or other related materials featuring or bearing any designation including or incorporating any of the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress, the Other BEN & JERRY'S® Flavor Names, "BEN & CHERRY'S", the Infringing Flavor Names or any of the Infringing Materials or any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation thereof, and to immediately remove them from public access.

4.      Directing that Defendants deliver for destruction all products, packaging, shopping bags, containers, advertisements, signs, displays and/or other related materials incorporating or bearing any of the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress, the Other BEN & JERRY'S® Flavor Names, "BEN & CHERRY'S", the Infringing Flavor Names or any of the Infringing Materials or any other counterfeit, copy, simulation, confusingly similar variation or colorable imitation thereof.

5.      Directing that Defendants recall all products, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays and/or other related materials in their possession, or under their control, incorporating or bearing any of the BEN & JERRY'S® Family of Marks, the BEN & JERRY'S® Trade Dress, the Other BEN & JERRY'S® Flavor Names, "BEN & CHERRY'S," the Infringing Flavor Names, or any of the Infringing Materials, or any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation thereof.

6.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any products or services manufactured, sold, distributed, licensed or otherwise offered, circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products and services.

7.      Directing that Defendants file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

8.      Awarding Plaintiffs such damages as they have sustained or will sustain by reason of Defendants' trademark infringement, dilution and unfair competition.

9.      Awarding Plaintiffs all gains, profits, property and advantages derived by Defendants from such conduct; and pursuant to 15 U.S.C. § 1107, awarding Plaintiffs an amount up to three times the amount of the actual damages sustained as a result of Defendants' violation of the Lanham Act.

10.     Awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

11.     Awarding Plaintiffs their costs and disbursements incurred in this action, including their reasonable attorneys' fees.

12.     Awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated:  New York, New York
        September 5, 2012

Respectfully submitted,

DUANE MORRIS LLP

By:_____

Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
R. Terry Parker

1540 Broadway
New York, NY 10036
Telephone: (212) 692-1000
Fax: (212) 692-1020

Attorneys for Plaintiffs
Ben & Jerry's Homemade Inc.
and Conopco, Inc.

DM2\3724839.1