JUDGE KAPLAN

# 12 CIV 6734

DUANE MORRIS LLP
Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
R. Terry Parker
1540 Broadway
New York, NY 10036

**Redacted Pursuant to Judge Kaplan's Order**

Attorneys for Plaintiffs
Ben & Jerry's Homemade Inc.
and Conopco, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC. and CONOPCO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RODAX DISTRIBUTORS d/b/a CABALLERO VIDEO, M. MORRIS, INC. d/b/a CABALLERO VIDEO, DANIEL MAMANE and TOMER YOFFE, <br><br> Defendants. | Case No.: |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER, RECALL ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION ....................................................................................... 4

I.   PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE
     MERITS ................................................................................................................. 5

     A.   Plaintiffs Are Likely to Prevail on their Federal and State Trademark and
          Trade Dress Dilution Claims                                                    5

          1.   The BEN & JERRY'S® Mark and Trade Dress Are Famous               6

          2.   The BEN & JERRY'S® Mark and Trade Dress Were Famous Long
               Before Defendants' Infringing Activities Commenced                 7

          3.   Defendants' Actions Are Likely to Dilute the BEN & JERRY'S® Mark
               and Trade Dress                                                      7

     B.   Plaintiffs Have A Strong Likelihood of Prevailing on their Trademark and
          Trade Dress Infringement Claims                                            9

          1.   Plaintiffs' BEN & JERRY'S® Family of Marks and BEN & JERRY'S®
               Trade Dress Are Entitled to Protection                              10

          2.   Defendants' Infringing Activities Create A Likelihood of Confusion   12

          3.   Plaintiffs Are Likely to Succeed on Their New York Unfair Competition
               Claim                                                                20

II.  PLAINTIFFS ARE SUFFERING IMMEDIATE AND IRREPARABLE HARM ......... 21

III. THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS'
     FAVOR ................................................................................................................ 22

IV.  RECALL OF THE INFRINGING ITEMS AND OTHER APPROPRIATE
     EQUITABLE RELIEF IS PARTICULARLY APPROPRIATE IN THIS CASE ........... 24

V.   PARODY IS NOT A DEFENSE ........................................................................... 24

CONCLUSION........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Laboratories, Inc. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992)............................21

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) .............................11

*AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384 (S.D.N.Y. 2002) .........................4

*American Home Products Corp., v. Johnson Chemical Co.*, 589 F.2d 103 (2d Cir. 1978)...........15

*Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir. 1986) ...........................................20

*Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60 (S.D.N.Y. 2003)......... 10-11, 14

*Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358 (S.D.N.Y. 2009).................................................6

*Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 U.S. Dist. LEXIS 53250
    (S.D.N.Y. June 10, 2009)............................................................................................................5

*Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217 (2d Cir.
    1987) .........................................................................................................................................20

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d
    30 (2d Cir. N.Y. 2010)................................................................................................................4

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490 (2d Cir.
    1989) .........................................................................................................................................25

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96 (S.D.N.Y. 1989) ...........15

*Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, *aff'd*, 604 F.2d
    200 (2d Cir. 1979).................................................................................................................7, 19

*Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39 (2d Cir. 1994) ....................................................25

*Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064 (S.D.N.Y. 1970)................................................23

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441 (S.D.N.Y. 2011)...............................20

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000).......................................22

*Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432 (S.D.N.Y. 1989) ............................................14

*Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997)....................................11

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) ....................................4

*GreenPoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405 (S.D.N.Y. 2000) ................................................................................................................21

*Gross v. Bare Essentials Beauty, Inc.*, 641 F. Supp. 2d 175 (S.D.N.Y. 2008) ........................11, 14

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) .....................................25

*Hasbro. Inc. v. Internet Entertainment Group Ltd.*, 40 U.S.P.Q.2d 1479 (W.O. Wash. 1996) ................................................................................................................8

*Hasbro, Inc. v. Internet Entm't Group Ltd.*, 40 U.S.P.Q.2d (BNA) 1479 (W.D. Wash. 1996) ................................................................................................................22

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988) ................................13, 19

*International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. Ill. 1988)..............23

*K2 Advisors, LLC v. K2 Volatility Fund, LP*, No. 02 Civ. 3984, 2002 U.S. Dist. LEXIS 18801 (S.D.N.Y. 2002) ........................................................................................13, 20

*Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) .................................21

*Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251 (2d Cir. 1982) .....................................19

*Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271 (S.D.N.Y. 1998) ..............................................................................................................11, 14

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986).......................10

*Mattel, Inc. v. Internet Dimensions, Inc.*, No. 99 Civ. 10066, 2000 U.S. Dist. LEXIS 9747 (S.D.N.Y. July 13, 2000) ....................................................................................21

*Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517 (S.D.N.Y. 2005)..........24

*Miss Universe, L.P. v. Villegas*, 672 F. Supp. 2d 575 (S.D.N.Y. 2009)......................................11

*My-T Fine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934) ................................................20

*Nabisco v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000).......................................15

*Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91 (2d Cir. 1993)......................................................24

*Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736 (2d Cir. 1998) ...............................10

*Parker Laboratories, Inc. v. Pharmaceutical Innovations, Inc.*, 767 F. Supp. 54 (S.D.N.Y. 1991) ..............................................................................................................20

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. 1981)..............................24

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 10 Civ. 3998, 2012 U.S. Dist. LEXIS 114606 (S.D.N.Y. Aug. 14, 2012) ...........................................................................13

*Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512 (S.D.N.Y. 2009)..............................................8

*Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 660 F. Supp. 1222 (E.D.N.Y. 1987)..........................................................................................15

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961)............................................................................ 12-14

*Polo Ralph Lauren L.P. v. Schuman*, 46 U.S.P.Q.2d 1046 (S.D. Tex. 1998)..............................22

*Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669 (Fed. Cir. 1984) .............15

*Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127 (2d Cir. 1982) .........................20

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009) ...............................5

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077 (S.D.N.Y. 1993) .............................................................................................................22

*Tactica Int'l v. Atl. Horizon Int'l*, 154 F. Supp. 2d 586 (S.D.N.Y. 2001) ....................................10

*Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395 (S.D.N.Y. 2011)....................................24

*Time, Inc. v. Petersen Publ. Co.*, 173 F.3d 113 (2d Cir. N.Y. 1999)..........................................13

*Toys "R" Us. Inc. v. Akkaoui*, 40 U.S.P.Q.2d 1836 (N.D. Cal. 1996) (TOYS "R" US held tarnished by use of "adultsrus.com" domain name for a web site advertising sexual products) ..........................................................................................................8

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289 (S.D.N.Y. 2002)............................................................................................9

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ......................................................14

*United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) ...........................................................................................................21

*Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339 (S.D. Fla. 2001)..................................................................................................8

*W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567 (2d Cir. 1993) ..................................13

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C 06-6572, 2007 U.S. Dist. LEXIS 98118 (N.D. Cal. Dec. 6, 2007) ............................................................................8

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)......................................................21

**Statutes**

15 U.S.C. § 1114.........................................................................................................................9

15 U.S.C. § 1125(a) ................................................................................................................. 9-12

15 U.S.C. § 1125(c) ................................................................................................................. 5-7

New York General Business Law § 360-l ....................................................................................5

Plaintiffs, Ben & Jerry's Homemade, Inc. ("Ben & Jerry's") and Conopco, Inc.

("Conopco") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support

of their application for a temporary restraining order ("TRO"), recall order, and order to show

cause for a preliminary injunction enjoining defendants from diluting and infringing Plaintiffs'

famous BEN & JERRY'S® trademarks, trade dress, logos, ice cream flavor names, and artwork.

## PRELIMINARY STATEMENT

This case is a classic, textbook example of trademark and trade dress dilution by

tarnishment and infringement. Defendants Rodax Distributors d/b/a Caballero Video

("Caballero"), M. Morris, Inc. d/b/a Caballero Video ("M. Morris") and Tomer Yoffe ("Yoffe")

(collectively, "Defendants") are in the business of producing, marketing, distributing and selling

"hardcore" pornographic films. Not content with the money they make from the exploitation of

their pornographic films, Defendants now attempt to exploit Plaintiffs' valuable BEN &

JERRY'S® intellectual property in an attempt to trade off of Plaintiffs' famous BEN &

JERRY'S® brand and Plaintiffs' reputation and valuable goodwill.

Plaintiffs' claims arise from Defendants' recent release of a series of pornographic films

marketed under the name "BEN & CHERRY'S." Defendants' "BEN & CHERRY'S" hardcore

films feature titles and themes based on well-known and iconic BEN & JERRY'S® ice cream

flavors. The labels on the DVDs and the product packaging in which Defendants' "BEN &

CHERRY'S" DVDs are sold also feature nearly identical simulations of Plaintiffs' famous BEN

& JERRY'S® trademarks, trade dress, logos, and artwork (collectively, the "BEN & JERRY'S

Intellectual Property"), alongside photographs depicting graphic sexual activity—despite the fact

that Defendants' Infringing "BEN & CHERRY'S" DVDs have no discernable connection to ice

cream (other than to trade off Plaintiffs' goodwill).

Plaintiffs seek to enjoin Defendants from producing, marketing, promoting, distributing and selling their pornographic "BEN & CHERRY'S" DVDs. Defendants' unauthorized use of simulations, confusingly similar variations and colorable imitations of the BEN & JERRY'S® Intellectual Property in connection with their sexually explicit, exploitative, pornographic "BEN & CHERRY'S" DVDs has damaged, is damaging and will continue to irreparably damage Plaintiffs' BEN & JERRY'S® Intellectual Property by tarnishing the luster of the BEN & JERRY'S® brand, and the valuable reputation and goodwill associated therewith. Defendants' activities must be stopped immediately to prevent irreparable and incalculable injury to Plaintiffs' valuable reputation and goodwill.

## STATEMENT OF FACTS

While the pertinent facts are set forth at length in the accompanying Declarations of David Stever, ("Stever Decl.") and Gregory P. Gulia, Plaintiffs herein provide a summary of the most salient facts for the Court's convenience.

For more than 35 years, Plaintiffs and their predecessors have continuously sold and advertised their ice cream, frozen confection, frozen yogurt and sorbet products under the distinctive BEN & JERRY'S® trademark ("BEN & JERRY'S® Mark"). Stever Decl. ¶ 6. Plaintiff Ben & Jerry's is the owner or exclusive licensee of several United States trademark registrations for ice cream, frozen confections, frozen yogurts, and/or related products, for the following trademarks: BEN & JERRY'S®, VERMONT'S FINEST®, NEW YORK SUPER FUDGE CHUNK®, CHERRY GARCIA® and EVERYTHING BUT THE . . .® ("BEN & JERRY'S® Flavor Marks"). Stever Decl. ¶¶ 2 and 3. Plaintiffs also sell ice cream products under the following flavor names: "Banana Split," "Boston Cream Pie," "Peanut Butter Cup," "Coconut Seven Layer Bar" and "Chocolate Fudge Brownie." Stever Decl. ¶ 18.

Over the years, the volume of sales of goods sold under the BEN & JERRY'S®

Intellectual Property has been enormous. Stever Decl. ¶ 11. Plaintiffs' BEN & JERRY'S® ice

cream products are always among the best-selling ice cream brands. Stever Decl. ¶ 11. Over the

last three years, Plaintiffs' sales of BEN & JERRY'S® packaged ice cream products have

exceeded $1.6 billion dollars with average annual sales of 493 million dollars. Stever Decl. ¶ 11.

The extraordinary success of Plaintiffs' BEN & JERRY'S® brand products over the past

35 years has fostered fame and wide renown with the trade and public. Stever Decl. ¶ 12. As a

result of this success, and the continuous and exclusive use of the BEN & JERRY'S® Mark and

the BEN & JERRY'S® Trade Dress (as defined herein) in connection with Plaintiffs' products,

consumers have come to recognize the BEN & JERRY'S® Mark and the BEN & JERRY'S®

Trade Dress as indicating products of Plaintiffs. Stever Decl. ¶ 12.

Plaintiffs market, distribute and sell their BEN & JERRY'S® ice cream products in

supermarkets, superstores, drugstores, and through online retailers in containers with a

distinctive appearance (the "BEN & JERRY'S® Trade Dress"), which Ben & Jerry's has been

using in substantially the same form since at least as early as 1999. Stever Decl. ¶ 19. The BEN

& JERRY'S® Trade Dress consists of the following distinctive elements: (1) a colorful and

distinctive backdrop depicting a sunny day with a light blue sky, large white puffy clouds and

black and white cows grazing on green grass ("Cow Design"); (2) the BEN & JERRY'S® Logo

(as hereinafter described); and (3) a container lid with a black rim. Stever Decl. ¶ 19.

The BEN & JERRY'S® Logo consists of the following protectable and distinctive

elements: (1) a unique rectangular shield device ("Shield Device") featuring the BEN &

JERRY'S® Mark at the center; (2) the BEN & JERRY'S® Mark printed in a distinctive, white,

capitalized, stylized typeface depicted against a black backdrop; (3) the VERMONT'S

3

FINEST® Mark which appears above the BEN & JERRY'S® Mark depicted in yellow initial capital lettering against the black backdrop; and (4) the term "ICE CREAM" which appears below the BEN & JERRY'S® Mark depicted in black capital block lettering against a yellow backdrop (collectively, the "BEN & JERRY'S ® Logo"). Stever Decl. ¶ 20.

Recently, Plaintiffs discovered that Defendants were producing, marketing, and selling a series of exploitative, hardcore pornographic films under the name "BEN & CHERRY'S" ("Infringing "BEN & CHERRY'S" DVDs"). Stever Decl. ¶ 26. Defendants' Infringing "BEN & CHERRY'S" DVDs use titles based on popular and well-known BEN & JERRY'S® ice cream flavor names. The Infringing "BEN & CHERRY'S" DVDs bear labels ("Infringing Labels") and are sold in product packaging which incorporate an almost exact replica of the BEN & JERRY'S® Logo and various protected elements of the BEN & JERRY'S® Trade Dress and artwork ("Infringing Product Packaging"). Stever Decl. ¶¶ 27.

## THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The relief sought by Plaintiffs is the only effective way to protect consumers and Plaintiffs from the harm caused by Defendants' acts of dilution, infringement, and unfair competition. The standards for granting a TRO and preliminary injunction are identical. *See AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002). On a motion for a TRO or preliminary injunction, the plaintiff must show (a) possible irreparable harm if the injunction is not granted and (b) either (1) likelihood of success on the merits or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. N.Y. 2010); *Genesee Brewing Co. v.*

*Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).  As set forth below, Plaintiffs satisfy both

prongs of the test for a TRO and preliminary injunction and are entitled to the requested relief.

## I.    PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    Plaintiffs Are Likely to Prevail on their Federal and State Trademark and Trade Dress Dilution Claims

Defendants' use of the infringing "BEN & CHERRY'S" designation and protected

elements of Plaintiffs' BEN & JERRY'S® Trade Dress in connection with Defendants'

Infringing "BEN & CHERRY'S" DVDs dilutes Plaintiffs' famous BEN & JERRY'S® Mark and

BEN & JERRY'S Trade Dress  (collectively, the "BEN & JERRY'S® Mark and Trade Dress")

in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

The Trademark Dilution Revision Act of 2006 ("TDRA") provides for the issuance of an

injunction against any person who commences use of a famous mark in commerce that is likely

to cause dilution by blurring or tarnishment of the mark,  regardless of whether any likelihood of

confusion, competition, or actual economic injury exists.  *See* 15 U.S.C. §1125(c).  New York

General Business Law § 360-l similarly provides that "likelihood of injury to business reputation

or of dilution of the distinctive quality of a mark or trade name shall be grounds for injunctive

relief," notwithstanding the absence of competition or confusion.

To prevail on a federal dilution claim, a plaintiff must demonstrate: (1) the senior mark is

famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's  use of

the junior mark began after the senior mark became famous; and (4) a likelihood of dilution.  *See*

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009).

New York General Business Law § 360-l employs a similar standard.  *See Burberry Ltd.*

*v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 U.S. Dist. LEXIS 53250, *26-*27 n.10  (S.D.N.Y.

June 10, 2009) (stating that courts treat state and federal dilution claims as effectively the same). However, New York's anti-dilution law does not require a mark to be famous. *See Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009).

### 1. The BEN & JERRY'S® Mark and Trade Dress Are Famous

The TDRA provides that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The statute sets forth a list of four non-exclusive factors to be used in determining a mark's fame: (i) "the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;" (ii) "the amount, volume, and geographic extent of sales of goods or services offered under the mark;" (iii) "the extent of actual recognition of the mark; and (iv) whether the mark was registered." *See* 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

The BEN & JERRY'S® Mark and Trade Dress are clearly famous. Plaintiffs and their predecessors have continuously sold and advertised their products under the registered BEN & JERRY'S® Mark throughout the United States for more than 35 years, and Ben & Jerry's owns numerous incontestable United States trademark registrations for the BEN & JERRY'S® Mark. Plaintiffs have continuously marketed, advertised, and sold their BEN & JERRY'S® ice cream products in product packaging embodying the BEN & JERRY'S® Trade Dress, throughout the United States, since at least as early as 1999.

Plaintiffs' tremendous sales volume and overall commercial success are further evidence of the fame of the BEN & JERRY'S® Mark and Trade Dress. Plaintiffs' BEN & JERRY'S® products are always among the top-selling brands. Since 2009, sales of BEN & JERRY'S® packaged ice cream products featuring the BEN & JERRY'S® Mark and the BEN & JERRY'S®

Trade Dress have been well in excess of $1.6 billion dollars, with average annual sales of 493 million dollars.  Accordingly, the BEN & JERRY'S® Mark and Trade Dress are clearly famous and distinctive.

> **2.      The BEN & JERRY'S® Mark and Trade Dress Were Famous Long Before Defendants' Infringing Activities Commenced**

As set forth above, Plaintiffs have been marketing and selling their BEN & JERRY'S ® ice cream products in connection with the BEN AND JERRY'S® Mark for over 35 years and the BEN & JERRY'S® Trade Dress for over 13 years.  Upon information and belief, Defendant only recently started selling their Infringing "BEN & CHERRY'S" DVDs which all bear the year 2012 in the copyright notice.  Accordingly, Defendants' use of the infringing "BEN & CHERRY'S" name, the Infringing Labels, and the Infringing Product Packaging commenced long after Plaintiffs' BEN & JERRY'S® Mark and Trade Dress became famous.

> **3.      Defendants' Actions Are Likely to Dilute the BEN & JERRY'S® Mark and Trade Dress**

Under both the federal and state dilution statute, a trademark claimant need only demonstrate a likelihood of dilution by the junior mark.  *See* 15 U.S.C.  § 1125(c)(l).  Likelihood of dilution may be established in two ways: blurring or tarnishment of the mark.  *See* 15 U.S.C. § 1125(c)(l).  Tarnishment occurs when there is an "association arising from the similarity between a mark or a trade name and a famous mark that harms the reputation of the famous mark."  15 U.S.C. § 1125(c)(2)(C).

Courts have consistently held that use of a famous trademark to purvey pornography constitutes dilution *per se*.  Likelihood of dilution, through tarnishment, has been consistently found in cases where there has been an unauthorized use of a plaintiff's trademark in connection with pornography, sexual activity, or obscenity.  *See Dallas Cowboys Cheerleaders v. Pussycat*

*Cinema, Ltd.*, 467 F.Supp. 366, 377, *aff'd*, 604 F.2d 200 (2d Cir. 1979) (use of Dallas Cowboys Cheerleaders uniform in pornographic film "Debbie Does Dallas" held to violate New York anti-dilution law); *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) (finding dilution where defendants used VIAGRA trademark in adult display); *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C 06-6572, 2007 U.S. Dist. LEXIS 98118, at *18 (N.D. Cal. Dec. 6, 2007) (likelihood of dilution found where defendants used POTTERY BARN marks on pornographic websites); *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1355 (S.D. Fla. 2001) (use of mark in domain names and trade name "used for entertainment of a lascivious nature suitable only for adults *mandates a* finding that [defendant's] domain names and trade name are likely to tarnish the VICTORIA'S SECRET Mark") (emphasis added); *Hasbro. Inc. v. Internet Entertainment Group Ltd.*, 40 U.S.P.Q.2d 1479 (W.O. Wash. 1996) (trademark CANDYLAND for children's game held tarnished by "candyland.com" for web site showing sexually explicit pictures); *Toys "R" Us. Inc. v. Akkaoui*, 40 U.S.P.Q.2d 1836, 1839 (N.D. Cal. 1996) (TOYS "R" US held tarnished by use of "adultsrus.com" domain name for a web site advertising sexual products).

Defendants' use of the infringing "BEN & CHERRY'S" designation and misappropriation and misuse of protected elements of Plaintiffs' BEN & JERRY'S Trade Dress in connection with their exploitative hardcore pornographic films is likely to tarnish Plaintiffs' valuable BEN & JERRY'S® brand by creating an unsavory association between the graphic content of Defendants' hardcore pornographic films and the BEN & JERRY'S® Mark and Trade Dress. Such an association is not only likely to offend Ben & Jerry's consumers, but it is entirely antithetical to the wholesome, socially progressive, family-oriented brand image and reputation that Plaintiffs have fostered in the BEN & JERRY'S® brand for over three decades. Consumers

8

exposed to Defendants' Infringing "BEN & CHERRY'S" DVDs will forever have a tainted view of the BEN & JERRY'S® brand and ice cream products due to the unwanted association with Defendants' pornographic films, thereby irreparably injuring Plaintiffs' goodwill and reputation and the value of the BEN & JERRY'S® Mark and Trade Dress.

Unless enjoined, Defendants' continued marketing and sale of the Infringing "BEN & CHERRY'S" DVDs featuring the infringing designation "BEN & CHERRY'S", titles and themes based on the names of well-known and iconic BEN & JERRY'S® Mark, ice cream flavors, Trade Dress will irreparably tarnish the BEN & JERRY'S® brand causing immeasurable harm to Plaintiffs and their iconic and famous BEN & JERRY'S® brand.

**B.     Plaintiffs Have A Strong Likelihood of Prevailing on their Trademark and Trade Dress Infringement Claims**

The Lanham Act governs the infringement of both registered and unregistered trademarks and trade dress.  Section 32(1) of the Lanham Act governs the infringement of registered trademarks and trade dress.  *See* 15 U.S.C. § 1114 (1)(a).  Section 43(a) of the Lanham Act protects against infringement of unregistered marks and other indicia of origin, including trade dress and trade names.  *See* 15 U.S.C. § 1125 (a)(1)(A).  Plaintiffs' BEN & JERRY'S® Mark, as well as several other of the BEN & JERRY'S® Family of Marks are registered trademarks and thus are governed by Section 32(1).  Because Plaintiffs' BEN & JERRY'S® Trade Dress is unregistered, it is governed by Section 43(a).  However, the standard for establishing a violation of Section 32(1) and Section 43(a) is the same.  *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("It is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)").

9

To establish a claim for violation of Section 32(1) or Section 43(a), a plaintiff must demonstrate: (1) ownership of a valid mark that is entitled to the protection of the law; and (2) that the defendant's use of the mark is likely to cause confusion among the relevant consuming public. *See Tactica Int'l v. Atl. Horizon Int'l*, 154 F. Supp. 2d 586, 597-98 (S.D.N.Y. 2001) (citation omitted); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) (holding "in either a claim of trademark infringement under § 32 or a claim of unfair competition under § 43, a *prima facie case* is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product").

"Trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer including the appearance of labels, wrappers and containers used in packaging [the] product." *Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 743 (2d Cir. 1998) (internal quotation omitted) (citation omitted). To establish a claim for trade dress infringement, a plaintiff must demonstrate (1) "that its trade dress is either inherently distinctive or that it has acquired distinctiveness through a secondary meaning, although an otherwise inherently distinctive trade dress is entitled to protection only if it is also nonfunctional" and (2) "that there is a likelihood of confusion between defendant's trade dress and plaintiff's." *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003) (citing *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (internal quotation omitted).

### 1.   Plaintiffs' BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress Are Entitled to Protection

Plaintiffs and/or their licensors own twelve United States trademark registrations for the BEN & JERRY'S® Family of Marks—eleven of which are incontestable. Incontestable trademark registrations serve as conclusive evidence of a mark's validity and the trademark

holder's ownership of and exclusive right to use the mark on the goods specified therein. *See Miss Universe, L.P. v. Villegas*, 672 F. Supp. 2d 575, 582-583 (S.D.N.Y. 2009) (incontestable registration is "conclusive evidence" of plaintiff's exclusive right to use mark and that mark is "presumptively distinctive"). The marks covered by these incontestable registrations are presumed to be distinctive and the registrations constitute conclusive proof that Plaintiffs' trademarks are entitled to legal protection. *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277 (S.D.N.Y. 1998).

To be protectable, trade dress: (1) must either be inherently distinctive or have acquired secondary meaning and (2) must not be functional. *See Fun-Damental Too*, 111 F.3d at 999 (2d Cir. 1997). The inherent distinctiveness of a trade dress is determined under the test set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976). Under the *Abercrombie* test, trade dress is classified on a continuum consisting of four categories which increase in distinctiveness: generic; descriptive; suggestive and arbitrary/fanciful. *See id.* at 9.

Plaintiffs' BEN & JERRY'S® Trade Dress is a strong, protectable, inherently distinctive trade dress. Because Plaintiffs' BEN & JERRY'S® Trade Dress embodies product packaging, inherent distinctiveness is presumed. *See Best Cellars*, 90 F. Supp. at 451. "Because there is a 'virtually unlimited' number of ways to combine elements to make up the total visual image that constitutes a trade dress, a product's trade dress typically will be arbitrary or fanciful and meet the inherently distinctive requirement for § 43(a) protection." *Id.*; *see also Gross v. Bare Essentials Beauty, Inc.*, 641 F. Supp. 2d 175, 193 (S.D.N.Y. 2008) ("Because manufacturers and retailers have a 'virtually unlimited' choice of packaging and labeling materials available to them, most packaging trade dress is arbitrary, fanciful, or suggestive.") (citation omitted).

Moreover, Plaintiffs' BEN & JERRY'S® Trade Dress constitutes a unique combination of non-functional features that are arbitrary and distinctive and thus are entitled to protection under Section 43(a). Plaintiffs' BEN & JERRY'S® Trade Dress is comprised of several unique elements which combine to create an innovative blend of non-functional and distinctive elements: (1) an ice cream container featuring a colorful and illustrative backdrop depicting a sunny day with a light blue sky and large white puffy clouds and black and white cows; (2) the BEN & JERRY'S® Logo, and (3) a cap with a solid brown or black rim. Stever Decl. ¶ 19. Below is a detailed depiction of the BEN & JERRY'S Trade Dress.



## 2.    Defendants' Infringing Activities Create A Likelihood of Confusion

For a finding of trademark and/or trade dress infringement, Plaintiffs must demonstrate a likelihood of confusion between the disputed marks or trade dresses. Courts in this Circuit utilize the eight factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961). Under this test, courts are to consider many factors including, *e.g.*: the strength of plaintiffs' mark, the degree of similarity

between the two marks, defendant's good faith in adopting its mark, the quality of defendant's product, the proximity of the products, the sophistication of the buyers, and actual confusion. *See id.*; *see also Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988). In applying this test no single factor is determinative. *See Polaroid*, 287 F.2d at 495.

> **a.   The Strength of the BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress Weigh In Favor of a Finding of Likelihood of Confusion**

The strength of a mark is "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *K2 Advisors, LLC v. K2 Volatility Fund, LP*, No. 02 Civ. 3984, 2002 U.S. Dist. LEXIS 18801, at *28 (S.D.N.Y. 2002) (citation omitted)). A mark's strength is assessed by analyzing, "(1) the degree to which it is inherently distinctive and (2) the degree to which it is distinctive in the marketplace." *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993). "The strongest marks are arbitrary or fanciful marks, which are entitled to the fullest protection against infringement." *Time, Inc. v. Petersen Publ. Co.*, 173 F.3d 113, 118 (2d Cir. N.Y. 1999) (citation omitted). "The next strongest are suggestive marks, which require imagination, thought and perception to reach a conclusion as to the nature of goods." *Id.*

Plaintiffs' BEN & JERRY'S® Family of Marks are all strong, inherently distinctive marks that are entitled to a broad scope of protection. Plaintiffs' BEN & JERRY'S® Mark is an arbitrary mark because it has a recognized meaning, but has no discernible connection to the product other than as an indication of source. *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 10 Civ. 3998, 2012 U.S. Dist. LEXIS 114606 at *26 (S.D.N.Y. Aug. 14, 2012). Plaintiffs' AMERICONE DREAM™ Mark is a coined term and thus a fanciful mark. *See id.* The VERMONT'S FINEST® Mark is a self-laudatory term, and thus is a suggestive mark. *See id.*

(citing *First Jewellery Co. of Canada, Inc. v. Internet Shopping Network LLC*, No. 99-cv-11239,

2000 U.S. Dist. LEXIS 794, at \*12-13 (S.D.N.Y. Feb. 1, 2000) (citing *Estee Lauder, Inc. v.*

*Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970), for the proposition that laudatory marks, such

as FIRST, are suggestive). Laudatory marks are inherently distinctive and thus are automatically

entitled to protection. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The

other BEN & JERRY'S Flavor Marks are similarly arbitrary, coined terms or laudatory marks

and are therefore strong. Accordingly, this factor weighs in favor of a finding of confusion.

     Plaintiffs' BEN & JERRY'S® Trade Dress also constitutes strong trade dress which is

entitled to a broad scope of protection. Because Plaintiffs' BEN & JERRY'S® Trade Dress

constitutes product packaging, inherent distinctiveness is presumed. *See Best Cellars*, 90 F.

Supp. at 451; *Gross*, 641 F. Supp. 2d at 193. Plaintiffs' BEN & JERRY'S® Trade Dress is also

inherently distinctive because it is arbitrary and serves no real connection or function in relation

to the goods. The Cow Design, BEN & JERRY'S® Logo and black rim are neither common to,

nor generally used in, the ice cream industry; nor do they serve any functional purpose or

represent any feature or quality of the product. Further, the commercial strength of Plaintiffs'

BEN & JERRY'S® Trade Dress is indisputable given Plaintiffs' longstanding advertising and

use of the BEN & JERRY'S® Trade Dress and the tremendous sales of Plaintiffs' ice cream

products featuring the BEN & JERRY'S® Trade Dress. Stever Decl. ¶ 11.

          **b.**    **The Identity of the Marks Strongly Weighs in Favor of a**
                 **Finding of Likelihood of Confusion**

     The similarity of the marks is a touchstone of consumer confusion. *See Frito-Lay, Inc. v.*

*Bachman Co.*, 704 F. Supp. 432, 435 (S.D.N.Y. 1989) (similarity of the marks is "a fundamental

*Polaroid* factor"). To make this assessment, courts begin by comparing the marks to determine

whether they are similar on their face. *See Lexington Management*, 10 F. Supp. 2d at 284.

14

In determining confusingly similar, courts look at the general impression created by the trademarks or trade dress, taking into account all factors that potential consumers will likely perceive and remember. *See Nabisco v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000). Marks need not be identical to be in conflict. *See Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 128 (S.D.N.Y. 1989). Courts consider "not only the visual appearance of the marks, but also their sound, connotation, and overall commercial impression." *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 660 F. Supp. 1222, 1227 (E.D.N.Y. 1987); *see also Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 672-74 (Fed. Cir. 1984) ("Spice Islands" and "Spice Valley" held to be confusingly similar); *American Home Products Corp., v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("Roach Motel" and "Roach Inn") (citing numerous cases for proposition that use of different words with similar meaning may tend to confuse).

Below is a chart comparing the overall commercial similarity between the BEN & JERRY'S® Family of Marks with the corresponding infringing designations and pornographic film titles used by the Defendants (collectively, the "Infringing Marks").

| Plaintiff's Mark | Defendants' Infringing Marks | Comparison of Similarities |
|---|---|---|
| BEN & JERRY'S® | BEN & CHERRY'S | Virtually identical except that "JERRY'S" has been substituted with similar looking and sounding "CHERRY'S" |
| AMERICONE DREAM™ | AMERICONE CREAM | Virtually identical except that "DREAM" has been substituted with similar looking and sounding with "CREAM" |
| CHERRY GARCIA® | HAIRY GARCIA | Virtually identical except that "CHERRY" has been substituted with similar sounding "HAIRY." |

| EVERYTHING BUT THE . . .® | EVERYTHING BUT THE BUTT . . . | Incorporates Plaintiffs' EVERYTHING BUT THE . . .® Mark in its entirety and adds the word "BUTT" |
|---|---|---|
| NEW YORK SUPER FUDGE CHUNK® | NEW YORK SUPER FAT AND CHUNKY | Incorporates words "NEW YORK SUPER," combined with word beginning with letter "F" and slight variant of "CHUNK." |
| VERMONT'S FINEST® | PORNO'S FINEST | Virtually identical except that "VERMONT'S" has been substituted with "PORNO'S." |

As demonstrated above, the overall commercial impression created by the Infringing Marks is confusingly similar to the overall commercial impression of Plaintiffs' BEN & JERRY'S® Mark or BEN & JERRY'S® Flavor Name Marks.  The likelihood of confusion is exacerbated by the fact that Defendants not only market their series of Infringing "BEN & CHERRY'S" DVDs  under the confusingly similar name "BEN & CHERRY'S," but are also using confusingly similar variations of the BEN & JERRY'S® Flavor Marks as the titles of their pornographic films.  Indeed, Defendants' have misappropriated not one or two—but ten BEN & JERRY'S® ice cream flavor names as titles for their pornographic films.

Not content with merely misappropriating Plaintiffs' BEN & JERRY'S® valuable ice cream flavor names, Defendants deliberately attempt to associate their Infringing "BEN & CHERRY'S" DVDs with Plaintiffs by copying Plaintiffs' BEN & JERRY'S® Trade Dress on the DVD labels and boxes in which the Infringing "BEN & CHERRY'S" DVDs are sold. Among the more blatant instances of Defendants' willful infringement of Plaintiffs' BEN & JERRY'S® Trade Dress are the following examples: (1) the infringing designation "BEN & CHERRY'S"; (2) a simulation of the BEN & JERRY'S® Logo, featuring a virtual reproduction of the Shield Device featuring the words "BEN & CHERRY'S"; "PORNO'S FINEST" and "XXX Ice Cream" depicted in the same positions, colors, fonts and typeface as used on the BEN

& JERRY'S® Logo; (3) a depiction of an ice cream container featuring a colorable imitation of Plaintiffs' Cow Design that, like Plaintiffs' Cow Design, depicts a light blue sky, large, puffy white clouds, and a black and white cow grazing on green grass; and (4) similar illustrations and graphics depicting various ingredients as appears on the packaging of the corresponding BEN & JERRY'S® ice cream products. Given the obvious, deliberate and palpable copying of plaintiffs' BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress, as clearly shown by the example below, this factor strongly favors Plaintiffs.



### c.   Defendants' Bad Faith Is Manifest

Defendants' bad faith is manifest from the fact that they misappropriated: Plaintiffs'

famous BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress (collectively,

"BEN & JERRY'S® Family of Marks and Trade Dress"); illustrations and graphics from

Plaintiffs' product packaging; and the names of Plaintiffs' iconic ice cream flavors such as

CHERRY GARCIA®.  Furthermore, Defendants' infringing acts were committed 35 years after

Plaintiffs and their predecessors first began using the BEN & JERRY'S® Mark, and more than a

decade after they began using the BEN & JERRY'S® Trade Dress and a number of the BEN &

JERRY'S® Flavor Marks.  In addition, Defendants had constructive notice of Plaintiffs'

trademark registrations for the BEN & JERRY'S® Family of Marks.  Finally, the nature, extent

and scope of Defendants' copying clearly evidence that Defendants' infringing activities were far

from accidental, but part of a brazen and willful scheme to capitalize on Plaintiffs' fame,

reputation and goodwill.  Defendants' actions are the essence and hallmarks of bad faith; thus

this factor supports a finding of likelihood of confusion.

### d.   The Quality of the Infringing Product Sold by Defendants

As set forth above, Plaintiffs will sustain permanent and irreparable reputational damage

as a result of Defendants' use of Plaintiffs' BEN & JERRY'S® Family of Marks and Trade

Dress in connection with Defendants' Infringing "BEN & CHERRY'S" DVDs.  Defendants'

adoption of the infringing "BEN & CHERRY'S" designation and protected elements of

Plaintiffs' BEN & JERRY'S® Trade Dress in connection with their raunchy pornographic films

is likely to tarnish Plaintiffs and their famous brands.  Not only will the sordid content of

Defendants' adult films alienate Plaintiffs' consumers and potential consumers, but it will

forever taint Plaintiffs and their BEN & JERRY'S® brand, undoing years of effort and

investment by Plaintiffs in creating its wholesome, socially progressive, family-oriented brand image.  Accordingly, this factor weighs heavily in favor of a likelihood of confusion.

e.       **The Lack of Proximity of The Parties' Goods Is of No Moment**

That the goods and services of the parties are different is of no moment here.  Courts have long recognized a trademark owner's right to prevent the unauthorized use of its mark in connection with pornographic materials.  *See e.g., Dallas Cowboys Cheerleaders*, 467 F. Supp. at 377 (use of Dallas Cowboy cheerleader costume in pornographic film "Debbie Does Dallas" infringed trademark rights of plaintiff despite the obvious difference in goods and services). "There is no requirement that the defendant's services or product be in direct competition with, or be of the same type as the product or service of the plaintiff."  *See id.* at 374.  Similarly, Defendants here have willfully infringed Plaintiffs' valuable and exclusive trademark rights by misappropriating Plaintiffs' BEN & JERRY'S® Family of Marks and Trade Dress for use in connection with their pornographic films.

f.       **The Relative Sophistication of the Consumers**

This factor, the sophistication of the relevant consumer group, is "grounded on the belief that unsophisticated consumers aggravate the likelihood of confusion."  *Hasbro*, 858 F.2d at 79 (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987)).  Here, the ordinary purchaser of the parties' products is a casual buyer.  *See, e.g., Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 259 (2d Cir. 1982).  Due to the low price points of the parties' respective products, the consumer is more likely to make impulse purchases and less apt to exercise a high degree of care.  Therefore, this factor weighs in favor of a finding of likelihood of confusion.

19

### c.   Defendants' Bad Faith Is Manifest

Defendants' bad faith is manifest from the fact that they misappropriated: Plaintiffs' famous BEN & JERRY'S® Family of Marks and BEN & JERRY'S® Trade Dress (collectively, "BEN & JERRY'S® Family of Marks and Trade Dress"); illustrations and graphics from Plaintiffs' product packaging; and the names of Plaintiffs' iconic ice cream flavors such as CHERRY GARCIA®.  Furthermore, Defendants' infringing acts were committed 35 years after Plaintiffs and their predecessors first began using the BEN & JERRY'S® Mark, and more than a decade after they began using the BEN & JERRY'S® Trade Dress and a number of the BEN & JERRY'S® Flavor Marks.  In addition, Defendants had constructive notice of Plaintiffs' trademark registrations for the BEN & JERRY'S® Family of Marks.  Finally, the nature, extent and scope of Defendants' copying clearly evidence that Defendants' infringing activities were far from accidental, but part of a brazen and willful scheme to capitalize on Plaintiffs' fame, reputation and goodwill.  Defendants' actions are the essence and hallmarks of bad faith; thus this factor supports a finding of likelihood of confusion.

### d.   The Quality of the Infringing Product Sold by Defendants

As set forth above, Plaintiffs will sustain permanent and irreparable reputational damage as a result of Defendants' use of Plaintiffs' BEN & JERRY'S® Family of Marks and Trade Dress in connection with Defendants' Infringing "BEN & CHERRY'S" DVDs.  Defendants' adoption of the infringing "BEN & CHERRY'S" designation and protected elements of Plaintiffs' BEN & JERRY'S® Trade Dress in connection with their raunchy pornographic films is likely to tarnish Plaintiffs and their famous brands.  Not only will the sordid content of Defendants' adult films alienate Plaintiffs' consumers and potential consumers, but it will forever taint Plaintiffs and their BEN & JERRY'S® brand, undoing years of effort and

investment by Plaintiffs in creating its wholesome, socially progressive, family-oriented brand image. Accordingly, this factor weighs heavily in favor of a likelihood of confusion.

    e.  **The Lack of Proximity of The Parties' Goods Is of No Moment**

   That the goods and services of the parties are different is of no moment here. Courts have long recognized a trademark owner's right to prevent the unauthorized use of its mark in connection with pornographic materials. *See e.g., Dallas Cowboys Cheerleaders*, 467 F. Supp. at 377 (use of Dallas Cowboy cheerleader costume in pornographic film "Debbie Does Dallas" infringed trademark rights of plaintiff despite the obvious difference in goods and services). "There is no requirement that the defendant's services or product be in direct competition with, or be of the same type as the product or service of the plaintiff." *See id.* at 374. Similarly, Defendants here have willfully infringed Plaintiffs' valuable and exclusive trademark rights by misappropriating Plaintiffs' BEN & JERRY'S® Family of Marks and Trade Dress for use in connection with their pornographic films.

    f.  **The Relative Sophistication of the Consumers**

   This factor, the sophistication of the relevant consumer group, is "grounded on the belief that unsophisticated consumers aggravate the likelihood of confusion." *Hasbro*, 858 F.2d at 79 (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987)). Here, the ordinary purchaser of the parties' products is a casual buyer. *See, e.g., Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 259 (2d Cir. 1982). Due to the low price points of the parties' respective products, the consumer is more likely to make impulse purchases and less apt to exercise a high degree of care. Therefore, this factor weighs in favor of a finding of likelihood of confusion.

g.     **Evidence of Actual Confusion Is Not Required**

Evidence of actual confusion is difficult to prove and not required for a finding of

likelihood of confusion. *See Centaur Communications,* 830 F.2d at 1227. However, in general,

where goods are inexpensive, as they are here, the absence of actual confusion is less significant

because consumers are unlikely to inform the trademark owner of their confusion. *See Beer Nuts*

*v. Clover Club Foods Co.,* 805 F.2d 920, 928 (10th Cir. 1986). This is particularly likely given

the prurient nature of Defendants' products. Also, because defendants have been promoting and

selling the Infringing "BEN & CHERRY'S" DVDs for such a short time, Plaintiffs cannot

reasonably be expected to adduce evidence of actual confusion. *See K2 Advisors,* 2002 U.S.

Dist. LEXIS 18801, at \*39-\*40 (citation omitted).

"[I]ntentional and direct copying gives rise to a presumption of a likelihood of

confusion." *Parker Laboratories, Inc. v. Pharmaceutical Innovations, Inc.,* 767 F. Supp. 54, 56

(S.D.N.Y. 1991). Thus, upon a showing of deliberate copying by defendants, the burden shifts to

the defendants to demonstrate the absence of consumer confusion. *See My-T Fine Corp. v.*

*Samuels,* 69 F.2d 76, 77 (2d Cir. 1934); *Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689

F.2d 1127, 1135-36 (2d Cir. 1982). Here, Plaintiffs have provided substantial evidence of

Defendants' intentional copying. Therefore, the burden shifts to Defendants to rebut the

presumption of likelihood of confusion. Accordingly, this factor weighs in favor of Plaintiffs.

**3.     Plaintiffs Are Likely to Succeed on Their New York Unfair**
**Competition Claim**

To prevail on an unfair competition claim, a plaintiff must (1) prove the existence of

actual confusion, if seeking damages, or a likelihood of confusion in order to obtain equitable

relief, and (2) show that Defendants acted in bad faith. *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.,* 784

F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (citing *Jeffrey Milstein v. Greger. Lawlor, Roth Inc.,* 58

F.3d 27, 34-35 (2d Cir. 1995)).  As discussed above, there is a strong likelihood of confusion.  It is quite apparent that Defendants have acted in bad faith.  Therefore, Plaintiffs have also demonstrated a likelihood of success on their common law unfair competition claim.

## II.    PLAINTIFFS ARE SUFFERING IMMEDIATE AND IRREPARABLE HARM

"Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable." *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (citation omitted) (internal quotation omitted).  Irreparable harm is generally presumed in cases of trademark infringement and dilution.  *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246-47 (2d Cir. 2009) ("a [party] who establishes that an infringer's use of its trademark creates a likelihood of confusion generally is entitled to a presumption of irreparable injury") (quoting *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir 2005); *GreenPoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 408 (S.D.N.Y. 2000) ("a likelihood of dilution establishes irreparable harm, because dilution is itself an injury which cannot be recompensed by money damages").  *See also Abbott Laboratories, Inc. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (holding there is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss").

Courts typically grant injunctive relief to prevent the threat of irreparable harm posed by association of a party's trademarks or trade dress with pornography.  *See Mattel, Inc. v. Internet Dimensions, Inc.*, No. 99 Civ. 10066, 2000 U.S. Dist. LEXIS 9747, at *24-*26 (S.D.N.Y. July 13, 2000) (permanent injunction awarded on grounds that linking BARBIE with pornography will adversely color the public's impressions of BARBIE); *Kraft Foods Holdings, Inc. v. Helm*,

21

205 F. Supp. 2d 942, 949-50 (N.D. Ill. 2002) (granting preliminary injunction "given the graphic, sexually explicit nature of the website . . . likely tarnishes Velveeta®"); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 466-467 (E.D. Mich. 2000) (granting preliminary injunction where Defendant's use of the famous trademark FORD "tarnishes the goodwill developed by a trademark holder by causing it to become associated with pornographic material"); *Polo Ralph Lauren L.P. v. Schuman*, 46 U.S.P.Q.2d 1046, 1048 (S.D. Tex. 1998) (granting permanent injunction to prevent defendants' use of "The Polo Club" or "Polo Executive Retreat" as the name of an adult entertainment club); *Hasbro, Inc. v. Internet Entm't Group Ltd.*, 40 U.S.P.Q.2d (BNA) 1479, 1480 (W.D. Wash. 1996) (granting preliminary injunction where children's game CANDYLAND was associated with "a sexually explicit Internet site").

As set forth in detail above, Defendants' hardcore pornographic films are likely to irreparably tarnish and erode Plaintiffs' BEN & JERRY'S® Intellectual Property by promoting an unsavory association with the sordid sexual acts depicted in Defendants' pornography. Such an association, if not enjoined, will forever tarnish and destroy Plaintiffs' carefully nurtured wholesome and socially progressive brand image and cause consumers to forever have a tainted view of the BEN & JERRY'S® brand and products. Such reputational damage is incalculable, irreparable and noncompensable.

## III.    THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR

If the injunction is granted, Defendants will suffer very limited effects on their overall business. The recently released Infringing "BEN & CHERRY'S" DVDs are just a few of the thousands of products sold by Defendants and there is no evidence that Defendants' business will suffer significantly if Plaintiffs' request for an injunction is granted. *See, e.g., Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1094 (S.D.N.Y. 1993) (finding that

any hardship to the infringer was reduced because of its ability to market its other non-infringing, non-diluting products). It should also be noted that Defendants intentionally violated Plaintiffs' rights. Thus, any harm to Defendants resulting from the issuance of an injunction was brought about by their own actions. *See International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir. Ill. 1988) ("[D]efendants brought any alleged harm onto themselves through their blatant use of the plaintiff's name in spite of their unequivocal knowledge of plaintiff's prior use of the name.").

Judge Lasker's comment in *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970), has relevance here:

> It is true that the granting of an injunction may impose hardship on the defendants, but the failure to grant relief would impose a greater hardship on the plaintiff. To the defendants the product involved is one of a large number in which each of them deals; it is a small part of their business. To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.

In the instant case the balance of hardships tips decidedly in Plaintiffs' favor. As set forth above, if Defendants' activities are enjoined, Defendant will only suffer minor inconvenience because the Infringing "BEN & CHERRY'S" DVDS were only recently released and are but ten of several thousand videos sold by Defendants. However, if Defendants' activities are not enjoined, Plaintiffs will suffer incalculable and irreparable damage to the Plaintiffs' BEN & JERRY'S® brand, goodwill and reputation as a result of the unsavory association with Defendants' and their products.

IV.   **RECALL OF THE INFRINGING ITEMS AND OTHER APPROPRIATE EQUITABLE RELIEF IS PARTICULARLY APPROPRIATE IN THIS CASE**

As one of the elements of relief sought on this motion, Plaintiffs have requested an order directing defendants to recall all of the Infringing "BEN & CHERRY'S" DVDs. Such relief is within the discretion of the Court and is, we believe, particularly appropriate in this case.

The district court clearly has the power to order a recall of infringing products. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 805 (2d Cir. 1981) (upholding the propriety of a recall as part of an injunctive order, finding that "a recall requirement is well within the district court's broad powers as a court of equity"); *see also Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 97 (2d Cir. 1993) (affirming order requiring recall of cameras bearing infringing trademark despite argument of appellant that less harsh remedies existed); *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (ordering recall where unlawful use was intentional); *Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517, 527 (S.D.N.Y. 2005) (ordering recall as necessary to force defendants "to withdraw merchandise from store shelves"). As the Second Circuit held in *Perfect Fit*:

> [T]he district court was entirely justified in fashioning swift and complete relief for [plaintiff]. The recall procedure would naturally hasten the removal of the offending materials from public view and therefore seek to end quickly the injury to [plaintiff].

646 F.2d at 807. Innumerable other courts have ordered the recall of infringing products. Plaintiffs' request for an order recalling the infringing products should be granted.

V.   **PARODY IS NOT A DEFENSE**

Defendants have no "parody" defense. It is well-recognized in the Second Circuit, as elsewhere, that a "fair use" defense such as parody applies only where the use of another's mark offers commentary or criticism of the parodied mark, rather than where a defendant's use merely

markets a product. *See Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (rejecting parody defense because defendant's use of the "mark makes no comment on Harley's mark; it simply uses it somewhat humorously to promote his own products and services . . . ."). *See also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490, 495 (2d Cir. 1989) ("trademark protection is not lost simply because the allegedly infringing use is in connection with a work of purported artistic expression"); *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39 (2d Cir. 1994) (alleged parody held to violate New York's anti-dilution statute).

Defendants' use of Plaintiffs' BEN & JERRY'S® Intellectual Property does not constitute parody. Plaintiffs' BEN & JERRY'S® Intellectual Property is not the subject of the Infringing "BEN & CHERRY'S" DVDs. The Infringing "BEN & CHERRY'S" DVDs offer no commentary or criticism of the BEN & JERRY'S® Intellectual Property. Neither Plaintiffs' BEN & JERRY'S® Intellectual Property nor their products are included in the content of the Infringing BEN & CHERRY'S DVDs. The BEN & JERRY'S® Intellectual Property is featured solely on the Infringing Labels and Infringing Product Packaging. Thus there is no commentary at all to consider. The parody defense fosters social commentary, criticism, and creative expression for its own sake, but it does not protect a purveyor of pornography who chooses to appropriate the goodwill of a famous brand to boost its sales.

## CONCLUSION

For all the foregoing reasons, the Court should now issue the requested TRO, seizure, impoundment and recall orders and a preliminary injunction as well as such other and further relief as may be just.

Dated:  New York, New York
        September 5, 2012

                         Respectfully submitted,

                         DUANE MORRIS LLP

                         By:

                             Gregory P. Gulia
                             Vanessa C. Hew
                             Mitchell A. Frank
                             R. Terry Parker

                             1540 Broadway
                             New York, NY 10036
                             Telephone: (212) 692-1000
                             Fax: (212) 692-1020

                             Attorneys for Plaintiffs
                             Ben & Jerry's Homemade Inc.
                             and Conopco, Inc.

DM2\3724858.1

26