JUDGE KAPLAN

**12 CIV 6734**

DUANE MORRIS LLP
Gregory P. Gulia
Vanessa C. Hew
Mitchell A. Frank
R. Terry Parker
1540 Broadway
New York, NY 10036

**Redacted Pursuant to Judge Kaplan's Order**

Attorneys for Plaintiffs
Ben & Jerry's Homemade Inc.
and Conopco, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC. and CONOPCO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RODAX DISTRIBUTORS, INC. d/b/a CABALLERO VIDEO, M. MORRIS, INC. d/b/a CABALLERO VIDEO, DANIEL MAMANE and TOMER YOFFE, <br><br> Defendants. | Case No.: <br><br> DECLARATION OF DAVID STEVER IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER, RECALL ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION |

I hereby declare:

1.      I am employed by Ben & Jerry's Homemade, Inc. ("Ben & Jerry's") as the Chief Marketing Officer for the famous BEN & JERRY'S® brand products sold under the BEN & JERRY'S trademark (the "BEN & JERRY'S® Mark"), which is owned by Ben & Jerry's Homemade, Inc., Plaintiff in the above-titled action. I make this declaration in support of Plaintiff's application for a temporary restraining order, recall order, and order to show cause for a preliminary injunction. I have personal knowledge of the facts stated herein, except where stated upon information and belief, and am competent to testify thereto.

2. Ben & Jerry's is the owner of several U.S. federal registrations for the famous BEN & JERRY'S® trademark (the "BEN & JERRY'S® Mark").

3. Plaintiff Conopco, Inc. ("Conopco") is the parent company of Ben & Jerry's and participates in the marketing and distribution of Ben & Jerry's ice cream, frozen confections and frozen yogurt products. (Plaintiffs Ben & Jerry's and Conopco are referred to collectively hereinafter as "Unilever" or "Plaintiffs.")

4. Unilever is also a premier producer, distributor and seller of ice cream, frozen confections, frozen yogurt and sorbet in the United States and throughout the world under the famous BEN & JERRY'S® Mark.

5. As detailed herein, this is an action for federal trademark and trade dress dilution and infringement, unfair competition and related claims in connection with Plaintiffs' famous BEN & JERRY'S® Mark. Plaintiffs seek to immediately restrain and enjoin Defendants' further marketing, distribution and sale of their series of pornographic films using Plaintiffs' famous BEN & JERRY'S® Mark, BEN & JERRY'S Flavor Marks (as hereinafter defined), BEN & JERRY'S® Trade Dress (as hereinafter defined), BEN & JERRY'S® Logo (as hereinafter defined), VERMONT'S FINEST® Mark (as hereinafter defined), ice cream flavor names, and artwork (hereinafter, the "BEN & JERRY'S® Intellectual Property"). The requested relief will prevent Plaintiffs' business and reputation from suffering any further irreparable harm due to defendants' tarnishment, infringement and exploitation of Plaintiffs' valuable intellectual property.

**Plaintiffs' BEN & JERRY'S Intellectual Property and Associated Goodwill**

6. Since at least 1978, Plaintiffs and their predecessors have continuously sold and advertised their ice cream, frozen confections, frozen yogurt and sorbet under the distinctive BEN & JERRY'S® Mark in interstate commerce. The famous BEN & JERRY'S® Mark has appeared on product packaging, advertising, promotional materials, displays and the like.

7.  Ben & Jerry's is the owner of the following registrations on the Principal Register of the United States Patent and Trademark Office for its BEN & JERRY'S® Mark, five of which are incontestable by operation of law:

| Mark | Registration Number | Registration Date | Goods and Services |
|---|---|---|---|
| BEN & JERRY'S | 1,303,989 | November 6, 1984 | 30 - ice cream |
| BEN & JERRY'S | 1,946,739 | January 9, 1996 | IC 30 - frozen yogurt |
| BEN & JERRY'S | 1,961,757 | March 12, 1996 | IC 42 - frozen confection store services |
| (BEN & JERRY'S logo) | 2,203,988 | November 17, 1998 | IC 30 - ice cream, frozen yogurt, sorbet and frozen confections |
| BEN & JERRY'S | 2,356,311 | June 6, 2000 | IC 28 - toys, namely, stuffed toys *and * toy wheeled vehicles, [ and jigsaw puzzles ] |
| BEN & JERRY'S | 3,336,158 | November 13, 2007 | IC 29 - dairy-based beverages |

These incontestable registrations serve as conclusive evidence of Ben & Jerry's' exclusive right to use the BEN & JERRY'S® Mark on the goods specified therein. Copies of the Certificates of Registration are annexed as Exhibit 1 of the accompanying Compendium of Exhibits (the "Compendium").

8.  Ben & Jerry's is also the owner of the following incontestable trademark registration on the Principal Register of the United States Patent and Trademark Office:

3

| Mark | Registration Number | Registration Date | Goods and Services |
|---|---|---|---|
| VERMONT'S FINEST | 2,145,985 | March 24, 1998 | Ice cream, frozen yogurt, sorbet and frozen confections |

This incontestable registration serves as conclusive evidence of Ben & Jerry's exclusive right to use the VERMONT'S FINEST® mark ("VERMONT'S FINEST® Mark") on the goods specified therein. A copy of the Certificate of Registration is annexed as Exhibit 2 of the Compendium.

9. Ben & Jerry's also owns or is the exclusive licensee of the following incontestable trademark registrations on the Principal Register of the United States Patent and Trademark Office for the names of some of their most popular ice cream flavors (collectively, the "BEN & JERRY'S Flavor Marks"), all of which are used in connection with the famous BEN & JERRY'S® Mark:

| Mark | Registration Number | Registration Date | Goods and Services |
|---|---|---|---|
| AMERICONE | 1,677,799 | March 3, 1992 | IC 30 - ice cream and ice milk cones |
| CHERRY GARCIA | 1,460,269 | October 6, 1987 | IC 30 - ice cream |
| CHERRY GARCIA | 2,076,717 | July 8, 1997 | IC 30 - frozen yogurt |
| EVERYTHING BUT THE... | 2,440,823 | April 3, 2001 | IC 30 - ice cream |
| NEW YORK SUPER FUDGE CHUNK | 2,035,273 | February 4, 1997 | IC 30 - frozen confections |

4

These incontestable registrations serve as conclusive evidence of Ben & Jerry's' exclusive right to use the BEN & JERRY'S® Mark on the goods specified therein. Copies of the Certificates of Registration are annexed as Exhibit 3 of the Compendium. The BEN & JERRY'S® Mark, the VERMONT'S FINEST® Mark and the BEN & JERRY'S® Flavor Marks are collectively referred to herein as the "BEN & JERRY'S® Family of Marks."

10. Plaintiffs' BEN & JERRY'S® products are currently available and sold to consumers throughout the United States. The BEN & JERRY'S® products are also currently available and sold to consumers in many other countries throughout the world by Plaintiffs, their affiliated companies and franchisees.

11. Over the years, the volume of sales of goods under the BEN & JERRY'S® Mark, the BEN & JERRY'S® Family of Marks and the BEN & JERRY'S® Trade Dress (as described in Paragraph 19 herein) has been enormous. Plaintiffs' BEN & JERRY'S® brand of ice cream, frozen confections, frozen yogurt and sorbet products are always among the best-selling brands for these products. In the 52 weeks ending August 4, 2012, Plaintiffs' BEN & JERRY'S® brand was among the highest sellers in the ice cream category with 5.2% of the market share and sales of more than 538 million dollars. Since 2009, sales of BEN & JERRY'S® packaged ice cream products featuring the BEN & JERRY'S® Mark and the BEN & JERRY'S® Trade Dress have been well in excess of over $1.6 billion dollars. An average of 15.2 million gallons of Plaintiffs' BEN & JERRY'S® packaged ice cream and 2.9 million cases of BEN & JERRY'S® ice cream novelties have been sold in each of the last three years, with average annual sales of 493 million dollars in each of those years.

12. The extraordinary and longstanding success of Plaintiffs' BEN & JERRY'S® brand products over the past 35 years has fostered wide renown with the trade and public. Moreover, the

products sold under the BEN & JERRY'S® brand and the BEN & JERRY'S® Trade Dress have a reputation for being of the highest quality. As a result of this success, and the long continuous and exclusive use of the BEN & JERRY'S® Mark and the BEN & JERRY'S® Trade Dress in connection with the marketing of ice cream, frozen confections, frozen yogurt and sorbet products, consumers have come to recognize the BEN & JERRY'S® Mark and the BEN & JERRY'S® Trade Dress as indicating products manufactured and sold solely by Plaintiffs.

13.   Since at least as early as April 1985, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the NEW YORK SUPER FUDGE CHUNK® trademark. The NEW YORK SUPER FUDGE CHUNK® trademark has been registered in the United States Trademark Office since February 1997. Since 2009, Plaintiffs' sales of their NEW YORK SUPER FUDGE CHUNK® ice cream have been 54.9 million dollars, with over 1.8 million gallons sold.

14.   Since at least as early as February 1987, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the trademark CHERRY GARCIA®, which Plaintiffs use under license from the successors to the estate of the famous, former member of the Grateful Dead, Jerry Garcia. The CHERRY GARCIA® trademark has been registered in the United States Trademark Office since October 6, 1987. Since 2009, Plaintiffs' sales of their CHERRY GARCIA® ice cream have been 215.3 million dollars, with 5.8 million gallons and 2.2 million cases of novelties sold (representing more than 26 million individual novelty items)—making CHERRY GARCIA® one of Ben & Jerry's most popular and best-selling ice cream flavors in the United States.

15.   Since March 1992, Plaintiffs and their predecessors in interest have owned a registration in the United States Trademark Office for the mark AMERICONE® in connection with ice cream. Since 2007, Plaintiffs have manufactured and sold a flavor of ice cream under the

trademark AMERICONE DREAM™, sales of which over the last three years were 60.5 million dollars with over 1.8 million gallons and over 205,000 cases of novelties (representing more than 2.4 million individual novelty items) sold.

16. Since at least as early as January 2000, Plaintiffs have manufactured, distributed and sold a flavor of ice cream under the trademark EVERYTHING BUT THE . . . ®. The EVERYTHING BUT THE . . .® trademark has been registered in the United States Trademark Office since April 3, 2001. Over the last three years, Plaintiffs' sales of their EVERYTHING BUT THE . . .® ice cream have been 40.6 million dollars with 1.3 million gallons sold.

17. Since 2010, Ben & Jerry's has manufactured and sold a flavor of ice cream under the trademark Jimmy Fallon's LATE NIGHT SNACK™. In that time, sales of Jimmy Fallon's LATE NIGHT SNACK™ have been 14.6 million dollars with 469,000 gallons sold.

18. Plaintiffs also manufacture, distribute and sell ice cream under the following flavor names: "Banana Split," "Boston Cream Pie," "Peanut Butter Cup," "Coconut Seven Layer Bar" and "Chocolate Fudge Brownie."

19. Plaintiffs market, distribute and sell their BEN & JERRY'S® ice cream products in supermarkets, superstores, drugstores, and through online retailers in containers with a distinctive appearance (the "BEN & JERRY'S® Trade Dress"), which Ben & Jerry's has been using in substantially the same form since at least as early as 1999. As illustrated below, the BEN & JERRY'S® Trade Dress consists of the following protectable and distinctive elements:

    a. a container with a colorful and distinctive backdrop depicting a sunny day with a light blue sky, large white puffy clouds and black and white cows grazing on green grass ("Cow Design");

    b. the BEN & JERRY'S® Logo; and

   c. a container lid with a black rim.

  20. As illustrated below, the BEN & JERRY'S® Logo consists of the following protectable and distinctive elements: (a) a unique rectangular shield device, with the middle portion of the top side raised, resembling a store sign ("Shield Device") featuring the BEN & JERRY'S® Mark at the center of the Shield Device; (b) the BEN & JERRY'S® Mark printed in a distinctive, stylized typeface featuring capital white lettering ("BEN & JERRY'S® Typeface") depicted against a black backdrop; (c) the VERMONT'S FINEST® Mark which appears above the BEN & JERRY'S® Mark depicted in yellow initial capital lettering against the black backdrop; and (d) the term "ICE CREAM" which appears below the BEN & JERRY'S® Mark depicted in black capital block lettering against a yellow backdrop (collectively, the BEN & JERRY'S ® Logo").

  21. The BEN & JERRY'S® Logo has been in use in substantially the same form since at least as early as 1998, with the major difference being that in 2010, the position of the VERMONT'S FINEST® Mark was moved from beneath the BEN & JERRY'S® Mark to above the BEN & JERRY'S® Mark, and the words "Ice Cream" were added beneath the BEN & JERRY'S® Mark. Copies of digital photographs of the front, back and top of a pint of Plaintiffs' BEN & JERRY'S® ice cream product featuring the current version of the BEN & JERRY'S® Trade Dress are annexed as Exhibit 4 of the Compendium.

  22. Plaintiffs continuously advertise and promote the BEN & JERRY'S® Intellectual Property and the products sold thereunder in a wide variety of national media including nationally circulated newspapers and magazines. Plaintiffs have also advertised on major television broadcast networks and on radio. As a consequence of their continual and extensive advertising of the BEN & JERRY'S® brand products, Plaintiffs have developed the BEN & JERRY'S® Family

of Marks into a master brand franchise, with extensions into such related segments as frozen confections, frozen yogurt and sorbet.

23.     Last year Plaintiffs spent over $15 million on advertising for their BEN & JERRY'S® ice cream products which resulted in more than 5 billion consumer impressions.

24.     Plaintiffs also operate a website at the domain name address WWW.BEN JERRY.COM, which serves to regularly advertise and promote their BEN & JERRY'S® brand products and provide product information. A print-out of a recent screen shot from Plaintiffs' WWW.BENJERRY.COM website is annexed as Exhibit 5 of the Compendium.

25.     Due to Plaintiffs' time and effort, widespread promotion and advertising, as well as the millions of dollars spent developing and marketing the BEN & JERRY'S® brand products, the BEN & JERRY'S® Intellectual Property has acquired and maintained an outstanding celebrity and fame. This, in and of itself, serves to symbolize the substantial and material good will that Plaintiffs have created for the BEN & JERRY'S® Mark throughout the United States and the world.

**Irreparable Harm**

26.     Plaintiffs have recently become aware that Defendants are tarnishing Plaintiffs' valuable and famous BEN & JERRY'S® Intellectual Property by selling, marketing, distributing and displaying DVDs embodying hardcore pornographic films under the name "BEN & CHERRY'S"—a name that is nearly identical to Plaintiffs' BEN & JERRY'S® Mark.

27.     Further exacerbating the likelihood of confusion and tarnishment of the BEN & JERRY'S® brand and reputation is the fact that Defendants are marketing, selling and distributing their "BEN & CHERRY'S" pornographic films using titles based on popular and well-known BEN & JERRY'S® ice cream flavor names, with labels affixed to the DVDs and in product packaging which incorporate an almost exact replica of the BEN & JERRY'S® Logo and various protected

elements of the BEN & JERRY'S® Trade Dress and artwork. Defendants display the following simulated names, elements, trademarks and graphic elements in fonts, styles, positions, colors and graphic formats which are identical, or virtually identical, to the corresponding names, fonts, typefaces, styles, positions, colors and graphic formats used by Plaintiffs on BEN & JERRY'S® products: (a) the name BEN & CHERRY'S in a rectangular device simulating the Shield Device; (b) the typeface for the name BEN & CHERRY'S copying the BEN & JERRY'S® Typeface; (c) the term "Porno's Finest" in the same position, color and typeface as the VERMONT'S FINEST® Mark appears on BEN & JERRY'S® products; (d) the term "XXX Ice Cream" in the same position, color and typeface as the term "Ice Cream" appears on BEN & JERRY'S® products; (e) simulations of the BEN & JERRY'S® Flavor Marks CHERRY GARCIA®, EVERYTHING BUT THE ...®, NEW YORK SUPER FUDGE CHUNK®, AMERICONE DREAM™ and LATE NIGHT SNACK™ (namely, "Hairy Garcia", "Everything But the Butt", "New York Super Fat & Chunky", "Americone Cream" and "Late Night Snatch"), in virtually the same typefaces as the BEN & JERRY'S® Flavor Marks appear on the BEN & JERRY'S® products; and (f) simulations of Plaintiffs' "Banana Split", "Boston Cream Pie", Peanut Butter Cup", "Coconut Seven Layer Bar" and "Chocolate Fudge Brownie" flavor names for the films entitled "Banana Clit," Boston Cream Thigh", Peanut Butter D-Cup", "Coconut 7-Lay-Her Bar" and "Chocolate Fudge Babes.", in typeface which is again very similar to the typeface used on the BEN & JERRY'S® products. Digital representations of Defendants' "BEN & CHERRY'S" DVDs appropriating the BEN & JERRY'S® Intellectual Property, alongside the corresponding BEN & JERRY'S® product packaging, are annexed as Exhibit 6 of the Compendium.

    28.    Defendants' unauthorized use of the name "BEN & CHERRY'S" and the BEN & JERRY'S® Intellectual Property in connection with Defendants' exploitative pornographic films

is highly likely to tarnish Plaintiffs' valuable BEN & JERRY'S® brand and undermine and damage the valuable goodwill and reputation associated therewith by promoting an association between Ben & Jerry's and the lewd, sexually explicit conduct portrayed in Defendants' films.

29. Defendants' use of the BEN & JERRY'S® Intellectual Property in this unsavory context is likely to offend Ben & Jerry's consumers and conflicts with and damages the wholesome, socially progressive, family-oriented brand image and reputation that Plaintiffs have fostered in their BEN & JERRY'S® ice cream and related products for over three decades.

30. Defendants' unauthorized use of the name "BEN & CHERRY'S" and the BEN & JERRY'S® Intellectual Property in connection with Defendants' pornographic films is likely to tarnish Plaintiffs' valuable BEN & JERRY'S® brand by creating an undesirable, unwholesome, or unsavory mental association between the BEN & JERRY'S ® Intellectual Property and ice cream products and Defendants' exploitative, hardcore pornographic films.

31. As detailed above, consumers exposed to Defendants' "BEN & CHERRY'S" pornographic films will have a tainted view of Plaintiffs' ice cream products due to the unavoidable and unforgettable association with Defendants' exploitative and lewd films, thereby irreparably injuring Plaintiffs' goodwill and reputation and the value of the BEN & JERRY'S® Intellectual Property.

32. To allow such a blatantly unauthorized commercial and offensive use will continue to severely damage plaintiffs' entire marketing program and goodwill in the BEN & JERRY'S® Intellectual Property.

33. Unless Defendants are enjoined by this Court from marketing, distributing and selling the "BEN & CHERRY'S" pornographic films, the BEN & JERRY'S® Intellectual Property will be forever tarnished in the minds of the consuming public. The result will be the

irreparable tarnishment and erosion of plaintiffs' famous and distinctive BEN & JERRY'S® Intellectual Property.

**Balance of the Hardships**

34. Plaintiffs have invested and dedicated significant amounts of money, time and resources to develop the BEN & JERRY'S® Intellectual Property as a strong brand. These efforts have proven enormously successful given the large level of sales of the BEN & JERRY'S® products, making BEN & JERRY'S® one of the most popular and famous ice cream brands in the United States.

35. Clearly the harm to Plaintiffs created by Defendants' misappropriation of the BEN & JERRY'S® Intellectual Property greatly outweighs any possible damage to Defendants resulting from the issuance of a temporary restraining order, preliminary injunction and recall order. Defendants must have been well aware of the risks involved in their willful, blatant and unauthorized use of the BEN & JERRY'S® Intellectual Property.

36. The granting of Plaintiffs' order to show cause for a temporary restraining order, preliminary injunction and recall order is necessary to prevent any further misuse of Plaintiffs' BEN & JERRY'S® Intellectual Property.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   South Burlington, Vermont
         September 5, 2012

_David Stever_
David Stever

DM2\3724539.1